[Crim. No. 2356. Fifth Dist. Aug. 31, 1976.]

THE PEOPLE, Plaintiff and Respondent, v.
RAYMOND JAMES EASTMON, Defendant and Appellant.

**COUNSEL**

Granger & Montgomery and J. Robert Montgomery, Jr., for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Willard F. Jones and Edmund D. McMurray, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

GARGANO, J.—By information, appellant was accused of selling, furnishing or giving away heroin in violation of section 11352 of the Health and Safety Code; he entered a plea of not guilty to the charge and then moved to suppress the evidence pursuant to section 1538.5 of the Penal Code; his suppression motion was denied, and the cause proceeded to jury trial. Appellant was convicted as charged in the information, and he was sentenced to state prison for the term prescribed by law. His appeal raises a fundamental issue: Should appellant's motion to suppress the evidence have been granted, since the charge against appellant was predicated upon a transaction which was consummated by a heroin addict who was induced by the police to act as an undercover agent as the result of an unlawful search and seizure of the addict's residence?

Prior to his conviction, appellant was the owner and operator of a barbershop and taxi cab company in the City of Ridgecrest. He employed Sharon Nicol as his taxi cab dispatcher, and she worked out of an office located in the barbershop; Ms. Nicol lived in Ridgecrest with Dennis Summers; Summers was on probation because of a conviction for possession of marijuana.

On June 28, 1974, Sharon Nicol was arrested for and charged with possession of heroin for sale; the police had searched appellant's barbershop while Ms. Nicol was working there and had found 120 bindles of heroin in a bowl on top of a television set, and 10 bindles of heroin in Ms. Nicol's purse. Later, appellant posted bond and obtained the girl's release; she resumed working for appellant as his dispatcher.

On July 14, 1974, Phillip Muse, a police informant, made a controlled purchase of heroin from Dennis Summers at Summers' residence in Ridgecrest; he turned the heroin over to Detective Michael Bradley of the Ridgecrest Police Department. Approximately 45 minutes later, Bradley and Officer Charles Stull went to Summers' residence without a search warrant and knocked on the front door; they identified themselves as police officers. Bradley mistakenly believed that as a condition of his probation Summers had agreed to submit his person and his place of residence to a search and seizure, with or without a search warrant, upon request of any law enforcement officer; when the detective heard shuffling noises and a toilet flushing inside, he drew his pistol and kicked

a hole in the front door. At about the same time, Summers opened the door and let Bradley and Stull in; Sharon Nicol was sitting on a bed just inside the front door.

After entering the house, Stull searched Summers' person, and both officers quickly searched the premises; no contraband was found. Bradley then told Summers and Ms. Nicol that if they had any heroin in the house it would be better for them if they would turn it over voluntarily; Ms. Nicol removed three bindles of heroin from a drawer and handed them to Bradley. Thereupon, Bradley asked the couple to work for the police as undercover agents; he intimated that if they cooperated they would not be arrested for the possession of the three bindles of heroin Ms. Nicol had given to him or for the sale of the heroin to Muse; also, he promised the couple that he would not tell Summers' probation officer about these latest transgressions and that Ms. Nicol might receive lenient treatment with regard to the criminal action pending against her for possession of heroin for sale. With these assurances, the couple agreed to purchase drugs from appellant. The group then went to the police station.

At the police station, both Summers and Ms. Nicol were strip-searched for narcotics; none was found. In addition, Officer Stull searched the couple's automobile; no contraband was found in the vehicle. Afterward, Bradley gave Summers $300 in currency; the serial numbers on the bills had been recorded. From the police station, Summers telephoned appellant and said, "I'm ready when you are ready." Appellant replied, "Okay, come on over."

A few minutes later, Summers and Ms. Nicol got into their automobile and drove to the barbershop; Detective Bradley and Officer Stull followed in an unmarked car. Summers got out of the automobile, went inside the barbershop, handed appellant $300, picked up 20 bindles of heroin that were lying on top of a table and returned to his vehicle; he drove the car to a nearby market where he handed over the 20 bindles of heroin to Bradley. Bradley gave Summers a patdown search and he searched Ms. Nicol's purse; no money or contraband was found. In the meanwhile, Stull searched the couple's automobile and found no money or contraband inside.

That evening, Detective Bradley obtained a search warrant and searched appellant's barbershop; the marked bills were found in

appellant's right front pants pocket. Appellant was placed under arrest and transported to jail.

At trial, Dennis Summers testified that the $300 in marked bills he gave to appellant on July 14, 1974, were not in payment for the 20 bindles of heroin he received from appellant at that time; he said that the money was in payment for 20 bindles he had previously acquired from appellant; Summers explained that he regularly received heroin from appellant on consignment and was given one bindle of heroin for his own use for every five bindles he sold.

Sharon Nicol testified that she was a heroin addict and that she supported her own habit by working for appellant. She too said that for every five bindles of heroin she sold, appellant would give her one bindle for her own use. Ms. Nicol also said that she received from appellant one bindle of heroin for each day she worked for him as a taxi cab dispatcher.

Appellant argues that the heroin evidence upon which his conviction was grounded should have been suppressed by the trial court because it was the "fruit of the poisonous tree" under the *Wong Sun* doctrine. (*Wong Sun* v. *United States* (1963) 371 U.S. 471, 487-488 [9 L.Ed.2d 441, 455-456, 83 S.Ct. 407, 417].) He asserts that the transaction which was consummated on the afternoon of July 14, 1974, between himself and Dennis Summers was the direct consequence of Detective Bradley's exploitation of the unlawful search and seizure that occurred at Summers' home. ■ Appellant relies upon the California "vicarious exclusionary rule" to assert that the court erred in holding that appellant had no "standing" to object to the illegality of that search and seizure; under the "vicarious exclusionary rule" a criminal defendant has standing to object to the introduction of evidence illegally seized from a third person and its "fruits" or products. (*Kaplan* v. *Superior Court* (1971) 6 Cal.3d 150, 154, fn. 1, 155, 161 [98 Cal.Rptr. 649, 491 P.2d 1]; *People* v. *Johnson* (1969) 70 Cal.2d 541, 553 [75 Cal.Rptr. 401, 450 P.2d 865, 43 A.L.R.3d 366]; *People* v. *Martin* (1955) 45 Cal.2d 755, 760-761 [290 P.2d 855]; *People* v. *McKunes* (1975) 51 Cal.App.3d 487, 490, 492, fn. 2 [124 Cal.Rptr. 126]; *Shuey* v. *Superior Court* (1973) 30 Cal.App.3d 535, 542-543 [106 Cal.Rptr. 452].)

We commence with two cogent observations. First, this is not a situation where the police willfully and intentionally, or without proba-

ble cause, invaded a third person's constitutional rights in an effort to coerce him into becoming a police informant. Had this been the case, we would have been faced with a basic policy issue similar to the one which gave birth to the exclusionary rule in the first instance. (See *United States* v. *Edmons* (2d Cir. 1970) 432 F.2d 577, 584; cf. *United States* ex rel. *Pella* v. *Reid* (2d Cir. 1975) 527 F.2d 380, 382-383.) Here, Detective Bradley had good cause to believe that Dennis Summers was in possession of heroin at his residence. In addition, the detective, in good faith, believed that as a condition of his probation Summers had consented to the search of his home and his person without a warrant. In fact, even Summers thought that he had given such consent when he was granted probation. As a consequence, when the detective offered Summers and his girlfriend, Sharon Nicol, leniency if they cooperated in the apprehension of appellant, he was under the good faith, though mistaken, impression that the evidence adduced from the search was admissible against the couple.

Second, we note that while the trial judge correctly determined that the search of Summers' residence was illegal (see *People* v. *Jasso* (1969) 2 Cal.App.3d 955, 964 [82 Cal.Rptr. 229]), though made in good faith, he also stated that appellant had no standing to object to that search and its "fruits." Standing alone, this observation is susceptible to the interpretation that the court was unaware of the California "vicarious exclusionary rule" and that he denied appellant's motion to suppress solely for that reason. Nevertheless, before making the statement that appellant had no standing to object, the judge also stated that he had read sections 76 and 76A in the 1974 Supplement to Witkin's California Evidence, Second Edition; these sections thoroughly discuss the applicable "standing" rules in Fourth Amendment cases. Accordingly, it is reasonably clear that the trial judge was aware of the California "vicarious exclusionary rule" and that when he said that appellant had no standing to object to the illegal search, he merely meant to say that the heroin transaction which occurred later in the day was not "tainted" by the illegal search and seizure at Summers' residence. It is elementary that on appeal we may give the trial court the benefit of all reasonable inferences that may arise from the record.

With these observations behind us, we return to appellant's thesis that the heroin transaction for which he was prosecuted was the "fruit of the poisonous tree" under the *Wong Sun* doctrine and that the heroin Summers acquired from appellant on July 14, 1974, and testimony pertaining thereto should have been suppressed by the trial court.

It is true that the trial court found that the search of Summers' residence, though made in good faith by Detective Bradley, was illegal. It likewise is true that there was a relationship between the illegal search and the heroin transaction between Summers and appellant which took place later that day; it was largely through the evidence adduced from the illegal search that the police were able to solicit the aid of Summers, the narcotic addict, in order to apprehend appellant, the heroin "pusher." The heroin transaction which resulted in appellant's arrest and conviction would not have occurred "but for" the illegal search of Summers' premises and Detective Bradley's promise that Summers and his girlfriend would receive lenient treatment if they cooperated with the police in apprehending appellant.

■ However, the "but for" test alone is not sufficient to render inadmissible evidence that subsequently is obtained by the police in a legal manner; to render inadmissible evidence which possibly would not have been obtained by the police "but for" some earlier police impropriety, there must be such a connection between the impropriety and the subsequent transaction so that it can be said, fairly, that the two transactions cannot be treated separately. In short, evidence is not rendered inadmissible against a defendant merely because there is a relationship between the evidence and some prior illegal police activity, if, for example, the evidence was obtained by the police as the result of an independent intervening act voluntarily committed by the defendant by means which are distinguishable from the initial illegality. (See *Mann* v. *Superior Court* (1970) 3 Cal.3d 1, 8 [88 Cal.Rptr. 380, 472 P.2d 468].) As the court explained in *Restani* v. *Superior Court* (1970) 13 Cal.App.3d 189, 198 [91 Cal.Rptr. 429]: "Under the *Wong Sun* test . . . evidence . . . is not excluded merely because it would not have been obtained but for the illegal police activity if the connection between such evidence and the illegal activity has become attenuated so as to dissipate the taint. [Citations.] Accordingly, if the prosecution can establish that the primary illegality was not a *sine qua non* or indispensable cause of the discovery of the physical evidence, but, that at worst it merely contributed to such discovery, the exclusionary rule does not apply. [Citations.]"

■ In the case at bench, the illegally seized evidence at Summers' residence did not result directly in any incriminating testimony against appellant, nor did it lead the officers to appellant's heroin cache. On the contrary, the heroin transaction that took place between appellant and Dennis Summers on the afternoon of July 14, 1974, was a separate,

independent voluntary sale made by appellant without police solicitation, inducement or entrapment. Only the "intervening unregenerate heart" of appellant could have produced it. (Cf. *People* v. *Guillory* (1960) 178 Cal.App.2d 854, 856 [3 Cal.Rptr. 415, 80 A.L.R.2d 1077].) Thus, while there may have been a relationship between the illegal search and the sale that occurred later in the day, in the sense that the illegal search produced the conduit needed by the police to apprehend appellant, there was no "exploitation" between the search and the voluntary sale within the context of the *Wong Sun* doctrine. In other words, the means by which appellant was apprehended for the crime for which he was charged and convicted are sufficiently distinguishable from the illegal search and seizure of the residence of Dennis Summers to be purged of any possible taint arising from that search and seizure. To paraphrase the words of Judge Friendly in *United States* v. *Edmons, supra,* 432 F.2d 577, 584, we are not obliged here to hold that an undercover arrangement made by the police and a narcotic addict in return for a promise of leniency, in connection with an offense uncovered by a good faith search and seizure which turns out to have been illegal, compels the suppression of heroin evidence later adduced from an independent, voluntary sale made by defendant to the narcotic addict. (See also *People* v. *McInnis* (1972) 6 Cal.3d 821, 826 [100 Cal.Rptr. 618, 494 P.2d 690].)

The case of *Kaplan* v. *Superior Court, supra,* 6 Cal.3d 150, upon which appellant relies for his position, is distinguishable. There, the police, after an unlawful search of the person of one Patterson, found a quantity of LSD tablets in a plastic bag in his possession. In exchange for immunity, Patterson agreed to testify that he purchased the LSD from defendant. While the Supreme Court applied the "vicarious exclusionary rule" in ordering the evidence suppressed, it is very clear that in that case Patterson's agreement to testify was the product of the unlawful search; in fact, the illegally obtained evidence formed the very basis for the charge against the defendant.

Appellant also claims that his conviction should be reversed because, over his objections, Summers and Ms. Nicol were permitted to testify about other heroin transactions they had with appellant. Appellant maintains that this testimony solely was admitted for the improper purpose of proving a predisposition on his part to commit drug offenses. (See e.g., *People* v. *Guerrero* (1976) 16 Cal.3d 719, 724 [129 Cal.Rptr. 166, 548 P.2d 366].)

■ Before receiving testimony revealing evidence of other crimes by the accused, a showing of materiality and necessity is important. (*People v. Stanley* (1967) 67 Cal.2d 812, 818 [63 Cal.Rptr. 825, 433 P.2d 913].) Evidence of other crimes only may be admitted if it tends logically and by reasonable inference to prove the issue upon which it is offered, if it is offered on an issue material to the prosecution's case, other than the defendant's propensity to commit crime, and if it is not merely cumulative with respect to other evidence which the prosecution may use to prove the same issue. (*People v. Guerrero, supra,* 16 Cal.3d 719, 724; *People v. Schader* (1969) 71 Cal.2d 761, 775 [80 Cal.Rptr. 1, 457 P.2d 841]; *People v. Stanley, supra,* 67 Cal.2d 812, 818-819.)

■ Appellant did not stipulate to knowledge of the narcotic character of heroin; the challenged evidence was admissible to prove this essential element of the offense charged. (*People v. Perez* (1974) 42 Cal.App.3d 760, 766 [117 Cal.Rptr. 195].) Also, the testimony of other offenses strengthened Summers' testimony as to the offense charged and was of proper benefit to the prosecution. (*People v. Stanley, supra,* 67 Cal.2d 812, 819.) Appellant denied furnishing heroin to Summers, and he claimed that the $300 given to him by Summers was only a part payment for the bail money he put up for Ms. Nicol when she was charged with possession of heroin for sale. Evidence of the consignment relationships appellant had with Summers and Ms. Nicol, though embracing evidence of other crimes, was relevant and material in explaining exactly what the $300 was for.

■ Appellant's last contention for reversal centers upon the witness Dennis Summers. He grasps upon the testimony of Dr. Richard Burdick, a psychiatrist, to insist that due to drug abuse Summers was incompetent to be a witness because he lacked the capacity to observe and perceive or to remember and recollect his observations; Dr. Burdick testified that the use of LSD could confuse one's perception, thereby impairing his capacity to perceive or to remember his observations.

We quickly dispose of this contention. Dr. Burdick did not personally interview Dennis Summers; his medical conclusions were based upon LSD users who had a history of suffering blackouts. Albeit Dennis Summers admitted to excessive use of drugs, he denied ever "passing out," "freaking out," or having any flashbacks, blackouts, amnesia or loss of memory from the use of LSD. In addition, the testimony of other prosecution witnesses indicated that Summers accurately perceived and

recollected the events surrounding appellant's furnishing of heroin to Summers.

The judgment is affirmed.

Brown (G. A.), P. J., and Franson, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied October 28, 1976.