STATE

v.

George W. COLVIN.

No. 79–415–C.A.

Supreme Court of Rhode Island.

Jan. 29, 1981.

Dennis J. Roberts, II, Atty. Gen., Kenneth P. Madden, Asst. Atty. Gen., for plaintiff.

Paul J. DiMaio, Joni Seplocha, Providence, for defendant.

OPINION

MURRAY, Justice.

The defendant George W. Colvin (Colvin) was convicted by a Superior Court jury on one count of possession of a controlled substance [1] and on another count of delivery of a controlled substance to a person under eighteen years of age who is at least three years his junior [2,3]. The matter is now before us on defendant's appeal of these convictions.

The uncontradicted testimony elicited at trial indicated that on January 26, 1977, the state's chief witness, Kenneth P. Ruzzo (Ruzzo), was taken to the defendant's house by the North Kingstown Police in an un-

---

1. In violation of G.L.1956 (1968 Reenactment) § 21–28–4.01(C)(1)(b), as enacted by P.L.1974, ch. 183, § 2.

2. In violation of G.L.1956 (1968 Reenactment) § 21–28–4.07(D), as enacted by P.L.1974, ch. 183, § 2.

3. A third count, that of maintaining a narcotics nuisance in violation of G.L.1956 (1968 Reenactment) § 21–28–4.06(1)(a), as enacted by P.L. 1974, ch. 183, § 2, was voluntarily dismissed by the state prior to trial.

marked police vehicle.[4] Unbeknownst to the defendant, Ruzzo was wired for sound and was carrying "marked" currency with which he was to effect a purchase of marijuana. The police searched Ruzzo's person before he entered, and they determined that he was carrying nothing other than the money that they had given him. The police kept the premises under surveillance after they had let Ruzzo off at Colvin's dwelling.

Ruzzo then knocked at the door, and Colvin let him in. Ruzzo asked Colvin if he had any drugs, but Colvin replied that he had none in the house and that he would have to go and get them. Ruzzo told Colvin he had left the money in his car. He then left the house and returned to the vehicle from which the officers were conducting their surveillance. The officers admonished Ruzzo to return to the house and to go ahead with the transaction.

Ruzzo heeded the admonitions of the officers and returned to the house. According to Ruzzo, six or seven other persons entered the dwelling at the same time he did. Upon his return, Ruzzo was escorted to an upstairs bedroom by Colvin. After Ruzzo gave Colvin the "marked" money, Colvin and he went into the bathroom. According to Ruzzo, Colvin then reached into a heater vent to retrieve a "bag of greenish brown material," which he gave to Ruzzo. After he received the bag, Ruzzo went outside to the car from which the officers were conducting the surveillance and handed it to them. The officers again searched Ruzzo, and they determined that he had no money on his person. The officers, believing a felony had just been committed, then entered the premises, found defendant, and placed him under arrest. The officers also found the marked money on the floor of one of the upstairs bedrooms.[5]

4. Ruzzo agreed to cooperate with the police because of his own legal difficulties. In his testimony, Ruzzo admitted to "eight or nine" breaking and enterings in North Kingstown. As part of a "bargain" Ruzzo struck with the police, he assisted in their investigation of defendant.

5. A total of $160 in marked currency was found on the bedroom floor. It appears the police

On April 14, 1977, a criminal information was filed against Colvin, and his trial commenced on May 16, 1978. In his opening statement, the prosecutor made the following remarks:

"Ladies and gentlemen, what I'm going to give you now is an opening statement. It's just a brief statement of what the State intends to prove in its case against this Defendant, Mr. Colvin; just a little something, a little scenario about what happened, the dates surrounding January 26, 1977. The police were involved, police of North Kingstown, along with Drug Control Agents, involved in an investigation of some drug activities and some related breaking and entering activity. During those investigations, they uncovered a person that was breaking into some several houses in the area, and after questioning him it was learned that he was buying drugs from this Defendant. That person, owing the Defendant for past drug purchases, was employed then by members of the North Kingstown Police Department with members of the Drug Control Agency to go about and pay back this Defendant with some money supplied to him by the Drug Control Agency; also at that time to make a buy, another buy of marijuana as he had in the past."

Immediately following this opening statement, defendant's counsel made a motion to pass the case:

"[D]ue to the remarks by my Brother, the Prosecutor, concerning prior buys, concerning prior drug activities, concerning statements of prior sales to this individual, none of which he has ever been charged with, none of which he's charged with presently, and none of which is rele-

gave Ruzzo $140 to pay off an alleged debt he incurred from a previous drug purchase. It is not clear, however, to whom this debt was owed. Ruzzo testified that he thought that he owed it to Colvin and a friend of Colvin, Andrew Keenan. Colvin maintains the debt was owed to Keenan alone. The other $20 was for the alleged purchase of the marijuana.

vant. Consequently, this jury at this particular time has been prejudiced by a whole group of information we feel is inadmissible, and by telling them such a history of drug dealings with this particular 17-year old is something that's not germane to this issue."

The trial justice denied this motion, but allowed defendant's counsel to take an exception.

During the course of the trial, defendant made a similar motion to pass after one of the North Kingstown policemen testified as follows:

"Q Now, in connection with that person in your town, did you do anything or what, if anything did you do with Kenny Ruzzo?

"A At that time, I received or did ask his mother after we got the name of George Colvin who was living on Lexington Avenue at the time, that he was selling drugs to juveniles. I asked his mother whether we would have her permission to use Kenny Ruzzo to try to purchase drugs again from George Colvin."

Again, the trial justice denied the motion to pass and, again, the exceptions of defendant's counsel were noted.

In ruling on defendant's first motion to pass, the trial justice briefly mentioned *State v. Colangelo*, 55 R.I. 170, 179 A. 147 (1935) and *State v. Beaulieu*, 116 R.I. 575, 359 A.2d 689 (1976). The ultimate basis for his decision, however, was that he did not "feel just a brief reference to prior conduct is prejudicial and it's something that I can handle by cautionary instructions to the jury, and I intend to do that." His cautionary instructions were as follows:

"Ladies and gentlemen of the jury panel, the Attorney General's representative has made his opening statement to you, and I think Mr. DiMaio is going to make his opening statement on behalf of his client, the Defendant, Mr. Colvin. I think some of you know that whatever the lawyers say about the facts or about anything in connection with the case is not evidence whatsoever. In fact, what-

ever I might say, if I discuss the facts, you can completely ignore what I say about the facts. The law, that's something else again. But, the facts you can only consider that which you hear from the witness stand and from the evidence or the exhibits. So that you will accept that in considering what the Attorney General has just said to you in his opening remarks and the same holds true for what Mr. DiMaio might say and whatever I might say.

"With that, we'll proceed. As I understand it, you want to make your opening statement now."

After defendant made his second motion to pass, the following occurred in chambers:

"MR. DI MAIO: Judge, just for the record, I'd like to put an exception. You're going to rule against my motion to pass?

"THE COURT: Yes. The record indicates that the officer in answering the question made the reference about selling drugs. There's been prior testimony about that from other witnesses. So, this isn't anything new. I'm going to have the question and answer read, and the answer will contain no reference whatsoever to the sale of drugs. I'm going to tell the jury that that is all—that that is the answer that that's all they may consider; if anything else was said, they're to ignore it. I feel that will more than adequately protect the Defendant.

"Your exception is noted on the record."

In open court, the trial justice had the stenographer read the last question and answer, apparently without reference to prior criminal conduct, and then added the following warning:

"If there is any other portion of the answer that was made by the Detective, the jury will completely ignore it. It was not responsive, and it contained hearsay. So, that's the answer. That's all you may consider."

In his brief and at oral argument defendant argued that the trial justice's denial of

his motions to pass the case had a prejudicial impact on the jurors and that it deprived him of his right to a fair trial as guaranteed by the Constitution.[6] We agree.

■ It is well-settled common-law rule that evidence which in any way shows or tends to indicate that the accused has committed another crime independent of the crime for which he is being prosecuted, even though it was a crime of the same nature, is irrelevant and inadmissible. *E. g., State v. Jalette*, R.I., 382 A.2d 526, 531 (1978). The reasons for the rule are obvious. When evidence of other crimes is offered, it creates a real possibility that the generality of the jury's verdict will mask a finding of guilt that is based upon involvement with unrelated crimes rather than evidence offered to prove defendant's guilt of the crime charged. *State v. Jalette*, 382 A.2d at 532. A person should not be convicted of a crime because he has committed other crimes for which he has not been punished. "[E]vidence of other crimes * * has a tendency to prejudice the jurors' minds against the accused and to predispose them to a belief in his guilt." 1 Wharton, *Criminal Evidence*, § 240 at 535 (13th ed. 1972) (footnote omitted).

Moreover, introduction of such evidence violates the rule barring the state from the initial introduction of evidence of the accused's bad character. *State v. Jalette*, R.I., 382 A.2d at 532; *State v. Guaraneri*, 59 R.I. 173, 194 A. 589 (1937). "The overriding policy of excluding such evidence * * * is the practical experience that its disallowance tends to prevent confusion of issues,

unfair surprise and undue prejudice." *Michelson v. United States*, 335 U.S. 469, 476, 69 S.Ct. 213, 218–19, 93 L.Ed. 168, 174 (1948) (footnote omitted).

■ There are, of course, several well recognized exceptions to this rule. Evidence concerning prior criminal activity is admissible if it tends to establish "guilty knowledge, intent, motive, design, plan, scheme, system, or the like * * * " *State v. Colangelo*, 55 R.I. at 174, 179 A. at 149; if it is offered to establish the identity of the accused, *United States v. Jones*, 476 F.2d 533, 536 (D.C.Cir.1973); or if it is offered to rebut the defense of entrapment when it is raised by the accused, *State v. DeWolfe*, R.I., 402 A.2d 740, 744 (1979). In addition, other courts have allowed the admission of such evidence to show knowledge of the narcotic character of the substance allegedly sold. *See People v. Eastmon*, 61 Cal. App.3d 646, 132 Cal.Rptr. 510 (1976). We have also stated that evidence relating to prior criminal behavior concerning sexual offenses may, in certain circumstances, be admissible in prosecutions for a subsequent sexual offense.[7]

■ In this case, however, the evidence does not fall within the ambit of any of the exceptions to the rule. It was not offered to establish guilty knowledge, intent, motive, design, plan, scheme, system, or the like. *Cf. State v. Colangelo*, 55 R.I. 170, 179 A. 147 (1935) (in prosecution of a "common cheat" evidence of prior immoral sexual conduct held admissible to show that the defendant knew to be false his representations of his being an inspired religious healer who healed "affected" persons by touch-

---

6. The defendant raises several other points but our disposition of this issue renders discussion of them unnecessary.

7. In *State v. Jalette*, R.I., 382 A.2d 526, 533 (1978) we adopted, with admonitions that it is to be sparingly applied, the holding in *People v. Kelley*, 66 Cal.2d 232, 424 P.2d 947, 57 Cal. Rptr. 363 (1967), where the Supreme Court of California held (1) that evidence of other not too remote sex crimes with the prosecuting witness are admissible to show a common

scheme or plan, 66 Cal.2d at 243, 424 P.2d at 956, 57 Cal.Rptr. at 372; (2) that evidence that the accused committed nonremote similar sexual offenses with persons other than the prosecuting witness may be admissible when one of the exceptions to the general rule, such as motive or intent, applies. 66 Cal.2d at 242, 424 P.2d at 956, 57 Cal.Rptr. at 372; and that (3) doubts as to the relevancy of such evidence must be resolved in favor of the accused, 66 Cal.2d at 239, 424 P.2d at 954, 57 Cal.Rptr. at 370.

ing various parts of their bodies).[8] The evidence was not necessary to establish the identity of the accused, *cf. Robinson v. United States*, 459 F.2d 847, 856–57 (D.C. Cir.1972) (evidence of prior drug sales to only government witness held admissible to establish identity of the accused), nor was it offered in rebuttal to defendant's assertion of entrapment as a defense, as it was in *State v. DeWolfe*, R.I., 402 A.2d 740 (1979). The narcotic character of the evidence seized was not an issue in the case, *cf. People v. Eastmon*, 61 Cal.App.3d 646, 655, 132 Cal.Rptr. 510, 515 (defendant did not stipulate regarding his knowledge of the narcotic character of the evidence).[9] Lastly, this case was not one that involved a sexual offense.

▮ The evidence in this case fell precisely within the general rule of exclusion. *See State v. Reed*, 447 S.W.2d 533, 534 (Mo. 1969). The rule as stated applies with equal force to opening and closing statements made by a prosecutor as it does to testimony referring to prior criminal acts. *Hall v. United States*, 150 U.S. 76, 81–82, 14 S.Ct. 22, 24, 37 L.Ed. 1003, 1007 (1893); *Government Of the Virgin Islands v. Oliver*, 360 F.2d 297, 299 (3rd Cir. 1966). We are cognizant of the trial justice's efforts to cure the error by giving cautionary instructions to the jury. His instructions served to inform the jury that the opening statement is not evidence; however, it has been held that an admonition to the jury that opening or closing statements do not constitute evidence is insufficient to correct the prejudicial error committed in the opening statement. *See United States v. Carney*, 461 F.2d 465, 467–68 (3rd Cir. 1972); *United States v. Nemeth*, 430 F.2d 704, 706 (6th Cir. 1970); *Government Of the Virgin Islands v. Oliver*, 360 F.2d 297, 299–300 (3rd Cir. 1966).

In this case, it cannot be denied that the prejudicial error in the prosecutor's opening statement, which was further aggravated

by the statements made by Detective Frettoloso, could easily have left an indelible imprint in the minds of the jurors. "It is one thing to 'strike' evidence from notes of testimony; it is something else again to 'strike' its searing impress from a juror's mind." *United States v. Clarke*, 343 F.2d 90, 93 (3rd Cir. 1965).

In light of the above we cannot say with reasonable assurance that the jury's verdict was not tainted by the prosecutor's prejudicial remarks and the officer's prejudicial testimony. It was not harmless error for the jurors to hear this testimony, and the trial justice's cautionary instructions failed to correct this harm.[10]

The judgment of conviction is vacated, and the cause is remanded to Superior Court for a new trial.

---

8. Indeed, the trial justice expressly found the exceptions in *State v. Colangelo*, 55 R.I. 170, 179 A. 147 (1935), to be inapposite to the facts of this case.

9. Here, defendant conceded that the substance contained in the bag that Ruzzo gave to the officers was marijuana.

10. *See United States v. Carney*, 461 F.2d 465, 468 (3rd Cir. 1972).