**STATE**

v.

**David GALLAGHER.**

No. 93–123–C.A.

Supreme Court of Rhode Island.

Feb. 23, 1995.

Jeffrey Pine, Atty. Gen., Jane McSoley, Aaron Weisman, Asst. Attys. Gen., for plaintiff.

Richard Casparian, Public Defender, Janice Weisfeld, Paula Rosin, Asst. Public Defenders, for defendant.

## OPINION

WEISBERGER, Acting Chief Justice.

This case comes before us on appeal by the defendant, David Gallagher (Gallagher/defendant), from judgments of conviction based upon two unrelated indictments involving three charges. The first indictment charged defendant with one count of simple assault and battery upon Francis Tessina, Jr., in violation of G.L.1956 (1981 Reenactment) § 11–5–3, as amended by P.L.1988, ch. 539, § 8. The second, a two-count indictment, charged defendant with the robbery and kidnapping of Bette Costa in violation of G.L. 1956 (1981 Reenactment) § 11–39–1 and § 11–26–1, as amended by P.L.1988, ch. 539,

§ 10. A jury found Gallagher guilty on all three counts. He was sentenced to concurrent fourteen-year terms with seven years to serve and seven years suspended for the robbery and kidnapping charges and to a concurrent one-year sentence for the assault and battery charge. We vacate the judgments of conviction. The facts insofar as pertinent to this appeal are as follows.

On February 14, 1989, at approximately eight o'clock in the evening a group of approximately eight teenaged boys, including defendant, was walking down Cowie Street in Newport, having just finished playing a game of basketball. Because the group was talking, laughing, and acting "boisterously," three officers from the Newport police department, who were on foot patrol, approached them. Lieutenant Francis Tessina (Lieutenant Tessina) and the other two officers informed the young men that after receiving many complaints about groups of young people congregating and causing problems, they would no longer tolerate youths congregating and "fooling around." Words were exchanged between the officers and the boys, and Lieutenant Tessina later testified that defendant threatened his family, specifically his son, Francis Tessina, Jr. (Tessina, Jr.).

Approximately forty minutes after the first encounter between the group of young men and the three police officers, the car occupied by the young men was stopped by several Newport police officers, including two that had been present at the earlier encounter. Lieutenant Tessina testified that he remembered arriving at the scene after the officers had taken the boys out of the car. He thought the police were detaining the group because the driver had a suspended license. He stated on cross-examination that defendant was not thrown against the car and was not beaten by any police officers.

Later at trial, Kenneth Jenkins (Kenneth), one of the boys with defendant that night, testified to a very different scenario. He stated that during the initial encounter with Lieutenant Tessina, words were exchanged between the boys and the officers. Still shouting at the officers, the boys were walk-

ing to Kenneth's car when four or five police cars pulled up beside them. The police told the boys that they were looking for a gun that they claimed was in the car or in the possession of one of the boys. The officers jumped out of their cars, threw the boys up against Kenneth's car, and searched the car and each of its occupants for the gun. Kenneth testified that the officers threw Gallagher on the ground and put him in the "claw," a device that restricts and twists a person's arms. The police were reluctant to let Gallagher loose, but they eventually released him. Robert Jenkins (Robert), Kenneth's brother, also testified that the police had defendant in the claw and in addition, that Lieutenant Tessina was present while four officers "rough[ed] him up" and hit him.

Approximately a week later, on the evening of February 22, 1989, Tessina, Jr., and Gallagher were involved in an altercation outside a birthday party that was being held at Kenneth's house. This incident gave rise to the charge of assault and battery against defendant. Tessina, Jr., Lieutenant Tessina's son, testified that Gallagher approached him and told him that Lieutenant Tessina had been harassing him. Tessina, Jr., told Gallagher that whatever happened between Gallagher and his father had nothing to do with him (Tessina, Jr.). Gallagher responded by hitting him in the face and then kicking him. Jeffrey Smith, another youth at the party testified, however, that Tessina, Jr., not only instigated the argument with Gallagher but also struck the first blow.

The defendant's convictions for robbery and kidnapping arose out of an incident which took place on February 26, 1989. Bette Costa (Bette), a resident of Newport at the time, testified that she had an agreement with a man in her neighborhood, Tyron Neal (Tyron), to sell fifteen vials of crack cocaine that he had given her on February 25, 1989. Bette testified that she decided not to sell the drugs and gave away five vials and threw away the other ten. The next day, on February 26, 1989, Tyron attempted several times to get money from Bette for the fifteen vials. He and his friends first drove her to Western Union where she was unsuccessful in obtaining any money. Next they took her to 46

Chadwick Street where they threatened to harm her if she did not pay Tyron for the drugs. Bette testified that defendant was present at 46 Chadwick Street and that, with a lighter, he ignited the spray from an aerosol can and used it as a torch, directing the flames at her. Soon after this incident Bette was allowed to leave the house, and Tyron told her that she had until "later" to obtain the money.

Bette testified that later in the evening, Tyron and several others, not including Gallagher, forcibly entered her house as she was returning home from an errand. They forced her into a car and once again drove to 46 Chadwick Street. When they arrived at the house, they put her into a chair that they called "the torture chair" and Tyron used a knife to cut off some of her hair. Bette testified that defendant was in the room during this incident and that he suggested to Tyron that they give Bette a "blanket party," meaning they should throw a blanket over her head and then everyone would hit her. At one point the lights were out, and Bette attempted to run out of the house through the back door. Bette testified that defendant blocked the back door with a chair and punched her in the face. Two women at the house, Michelle Carter (Michelle) and Carissa Pina, then searched Bette's pockets and took $66 from her. After several people in the house beat and kicked her, Tyron physically threw Bette out of the house. Once she was free, Bette related these events to two police officers who were driving down Chadwick Street. Approximately ten minutes later, she returned with the officers to 46 Chadwick Street and identified several people in the house, including defendant, as those who had participated in the foregoing events.

The testimony of four defense witnesses contradicted Bette's version of Gallagher's actions on the night of February 26, 1989. Robert testified that on the night of February 26, 1989, he was with defendant at 46 Chadwick Street but that they were upstairs while Bette was in the house. He testified that after hearing a commotion, they immediately went downstairs and saw Bette running out of the building.

Michelle, who had also been present at 46 Chadwick Street that night, testified concerning Gallagher's whereabouts. She stated that while Bette was at the residence, she (Bette) was detained by Tyron and his friends. She testified that Gallagher was upstairs with someone else while Bette was in the house and that to her knowledge he was not involved in any detention of or physical harm to Bette that evening.

A third witness, Bernard Tribble (Tribble), testified that on February 26, 1989, he drove Tyron to Bette's house to pick her up and then drove them both back to 46 Chadwick Street. The defendant was not in the car during this incident. Tribble testified that after dropping off Tyron and Bette, he went to make a phone call and returned to the house approximately one half hour to an hour later. He stated that Bette was seated and Tyron and a group of Tyron's friends were standing around her, but that Gallagher was not part of this group. He testified that he did not see defendant use an aerosol can as a torch, nor did he see defendant strike Bette. Tyron also testified for the defense. At the time of trial he was serving a sentence at the Boys Training School. Tyron testified that defendant was upstairs during the confinement and robbery of Bette and that defendant had not been involved.

The defendant claims in his appeal that prejudicial evidence was improperly admitted in two instances. He contends that the admission of this evidence was improper because it was both irrelevant and highly prejudicial. We agree.

The first instance involved the testimony of a defense witness, Kenneth, who was a friend of Gallagher. On direct examination Kenneth described an encounter between a group of approximately eight of his friends, including himself and defendant, and the Newport police on the night of February 14, 1989. He testified that as he and his friends were walking back towards his car on Cowie Street following a basketball game, two police officers approached them and words were exchanged. Shouting ensued between the group and the two officers, and before the group reached Kenneth's car, four or five police cars had arrived at the scene. Kenneth testified that the police officers threw him and his friends against his car and said that either there was a gun in the car or that one of the boys was carrying a gun. The officers then proceeded to search the car and each person in the group.

During the state's cross-examination, the prosecutor questioned Kenneth about this incident and asked him whether the police were investigating a fight with some Navy men. After he responded that the police were looking for a gun, defense counsel objected. Kenneth then responded that he did not know of or did not recall a fight with any Navy men and the court overruled the objection. The prosecutor proceeded to ask Kenneth several questions regarding the shooting of a Navy man in the Tonomy Hill area of Newport and whether he knew at the time he was stopped that the police were looking for the gun used in the shooting.

The defendant's second claim that prejudicial evidence was improperly admitted relates to the testimony of a rebuttal witness. Officer Gonsalves was a rebuttal witness for the state who also testified with respect to the shooting of the Navy man. His testimony was allegedly offered to rebut Kenneth's testimony since the state maintained that Kenneth was confused about which night the police searched for the gun. Officer Gonsalves testified that he had, in fact, stopped Kenneth on February 14, 1989, because he did not have a license plate displayed on the front of his automobile but that he had no recollection of searching the car that night and he was certain that no one was dragged from the car or arrested. Officer Gonsalves testified that he did stop Kenneth again in the spring of 1990. When asked why he had stopped Kenneth on the later occasion, Officer Gonsalves replied,

"That particular night we had information that there was going to be a possible shooting of a military personnel [sic] at the GV Club. We had information from what they termed as posse members and that they were going to, in fact, try to target these persons in the GV and shoot one of them."

The defendant argues that this testimony, along with the questions posed to Kenneth on cross-examination, implies that he or his friends were suspects in the shooting of a Navy man. Even if this evidence was offered as the state claimed, to prove that defendant was not present when the police searched Kenneth for the gun, the evidence was, nevertheless, irrelevant and sufficiently prejudicial to defendant that its admission constituted reversible error.

■ As a general rule, evidence that shows or tends to indicate that the accused has participated in a crime for which he or she is not on trial, even if it is the same type of crime, is irrelevant and inadmissible. *State v. Cardoza,* 465 A.2d 200, 202 (R.I. 1983); *State v. Jalette,* 119 R.I. 614, 624, 382 A.2d 526, 531 (1978); *State v. Mastracchio,* 112 R.I. 487, 493, 312 A.2d 190, 194 (1973). "The overriding policy of excluding such evidence * * * is the practical experience that its disallowance tends to prevent confusion of issues, unfair surprise and undue prejudice." *State v. Colvin,* 425 A.2d 508, 511 (R.I.1981) (quoting *Michelson v. United States,* 335 U.S. 469, 476, 69 S.Ct. 213, 218–19, 93 L.Ed. 168, 174 (1948)). When a jury is allowed to consider independent crimes for which a defendant is not on trial, a real possibility exists that such indication of bad character or bad acts would create prejudice in the minds of the jurors and improperly influence their decision in regard to the crimes charged. *Colvin,* 425 A.2d at 511. The danger is that jurors may believe that the prior crimes or bad acts denote a propensity in a defendant to commit the crime with which he or she is charged. In these circumstances the potential for prejudice outweighs the probative value of such evidence, and it is therefore inadmissible. *State v. Brown,* 626 A.2d 228, 233 (R.I.1993); *State v. Chartier,* 619 A.2d 1119, 1122 (R.I.1993).

■ There are, however, several well-established exceptions to this exclusionary rule. Evidence of other prior crimes may be allowed if it tends to establish the defendant's "guilty knowledge, intent, motive, design, plan, scheme, system, or the like" with respect to the offense charged. *State v. Lemon,* 497 A.2d 713, 720 (R.I.1985) (quoting *State v. Colangelo,* 55 R.I. 170, 174, 179 A. 147, 149 (1935)). Similarly, evidence of other crimes may be admissible if it tends to show a defendant's preparation, opportunity, identity, absence of mistake or accident, or to prove that a defendant feared imminent bodily harm and that the fear was reasonable. *Brown,* 626 A.2d at 233; R.I.R.Evid. 404(b). Such evidence may also be introduced if it is relevant to prove a material element of the crime with which a defendant is charged. *State v. Acquisto,* 463 A.2d 122, 128 (R.I. 1983). If admitted, the evidence must be received cautiously and with specific instructions from the trial justice explaining the limited purpose for which the jury may consider it. *Brown,* 626 A.2d at 233; *Chartier,* 619 A.2d at 1123; *Jalette,* 119 R.I. at 625, 382 A.2d at 532.

In the instant case the state was permitted to introduce irrelevant and highly prejudicial evidence relating to another serious and independent crime for which defendant was not on trial. The state maintains the evidence elicited from Kenneth on cross-examination and from Officer Gonsalves was offered to rebut the testimony of Kenneth on direct examination. This argument, however, does not justify the admission of such prejudicial evidence. It implicated defendant in a serious crime unrelated to the charges he faced in this prosecution. Moreover, the evidence was not offered for any of the purposes set forth in Rule 404(b) of the Rhode Island Rules of Evidence, for which evidence of other crimes, wrongs, or acts may be admissible. There was no justification for the state's introduction of evidence of a premeditated shooting to show that Kenneth was confusing two nights on which he had been stopped by the Newport police. The testimony regarding the shooting of the Navy man was irrelevant and "could only cause confusion in the jurors' minds and divert their attention from [the] relevant evidence." *State v. Burke,* 427 A.2d 1302, 1304 (R.I. 1981).

The state maintains that defendant was not prejudiced by the reference to the shooting because the state's rebuttal witness, Officer Gonsalves, "did not implicate Gallagher in the Naval shooting in any way." This

argument is without merit. The state did implicate defendant's friends in the shooting, which certainly prejudiced defendant. It not only implied that defendant was friendly with dangerous people, it seriously impaired the credibility of the defense witnesses. *See State v. Pugliese,* 117 R.I. 21, 362 A.2d 124 (1976).

In the case at bar defendant objected when the state introduced evidence of the shooting of the Navy man. Although the objection was overruled, counsel failed to request a limiting instruction. In this instance, however, a curative instruction would have proved futile. The credibility of the witnesses was the paramount issue at trial. Therefore, evidence that implicates defendant's witnesses, and possibly defendant, in a premeditated shooting is highly prejudicial. In these circumstances there is a strong probability that the damaging evidence was so "indelibly etched in the jurors' minds" that it could have influenced their decision concerning Gallagher's guilt or innocence. *See State v. Anil,* 417 A.2d 1367, 1373 (R.I.1980).

■ The defendant also points to a second instance wherein he was prejudiced by a reference by the prosecutor to improper and inadmissible evidence. During the cross-examination of Robert, a friend of Gallagher who testified for the defense, the state elicited testimony relating to prior arrests of defendant. The defendant claims that this evidence was irrelevant and highly prejudicial and should not have been brought to the jury's attention. We agree.

Robert was with defendant on two occasions that were discussed at trial: (1) February 14, 1989, on Cowie Street in Newport following a basketball game and (2) February 26, 1989, at 46 Chadwick Street in Newport. Robert testified that during this period he spent most of his time with Gallagher. On cross-examination the state asked Robert, "But David [Gallagher] has been arrested many times, hasn't he?" The defense objected, and the objection was sustained. The jury was told to disregard the question and Robert's partial answer, "Yep, he has been before—," was stricken from the record. The prosecutor continued, however, to question Robert regarding Gallagher's prior arrests. The state claims that it was trying to show that Robert was confusing the night of February 14, 1989, with other times that Gallagher had been arrested, and could have been similarly confused about the night he testified he was with Gallagher at 46 Chadwick Street.

The basis for our review of this issue is the question posed to Robert on cross-examination, "But David has been arrested many times, hasn't he?" Although the defense's objection was sustained, the witness was able partially to answer the question and stated that defendant had previously been arrested.

■ As stated earlier, evidence of unrelated, prior crimes is irrelevant and inherently prejudicial. *Cardoza,* 465 A.2d at 202; *Colvin,* 425 A.2d at 511; *Jalette,* 119 R.I. at 624, 382 A.2d at 531–32. Such evidence is deemed inadmissible in order "to prevent a jury from finding a defendant guilty based upon unrelated crimes rather than upon the evidence pertaining to the charged offense." *Cardoza,* 465 A.2d at 202 (citing *Jalette,* 119 R.I. at 624, 382 A.2d at 532). If evidence of other crimes is admitted, all that is necessary to show prejudice is a reasonable possibility that the improper evidence contributed to a defendant's conviction. *Burke,* 427 A.2d at 1304. Furthermore, this court has held that "if we are unable to say whether the jury would have reached the same verdict if the evidence had not been improperly admitted, we will enter a finding of reversible error." *Id.*

In the instant case evidence of prior arrests would have been inadmissible for any purpose. *See State v. Milne,* 95 R.I. 315, 325, 187 A.2d 136, 141 (1962), *appeal dismissed,* 373 U.S. 542, 83 S.Ct. 1539, 10 L.Ed.2d 687 (1963). Although the court instructed the jury to disregard the question and ordered that the answer be stricken from the record, the damage was too great to be cured in this manner. Since a reasonable probability exists that the jury in this case considered defendant's prior arrests when deciding his guilt or innocence in respect to the crimes charged, the misconduct of the prosecutor in asking this question and receiving a partial answer created an impression in

the minds of the jurors that could not be erased by the court's striking the question and answer and giving a curative admonition to disregard the question and answer. "It is one thing to 'strike' evidence from notes of testimony; it is something else again to 'strike' its searing impress from a juror's mind." *Colvin,* 425 A.2d at 512 (quoting *United States v. Clarke,* 343 F.2d 90, 93 (3d Cir.1965)).

 The state maintains it was trying to show that the witness was confusing two separate incidents involving Gallagher and the Newport police. The transcript of the trial, however, does not indicate that Robert was confused. He testified clearly and unequivocally that on the night of February 14, 1989, Gallagher was put in the claw and detained by the police and that on February 26, 1989, he was upstairs with Gallagher at 46 Chadwick Street and that Gallagher did not participate in the beating of Bette. Nothing in this testimony constituted an excuse for the prosecutor to embark on such a clearly improper line of questioning. The prosecutor's conduct in this instance was extremely prejudicial to defendant.

It should be noted, however, that the defendant did not move for a mistrial based upon the foregoing prosecutorial misconduct. This would have been the only adequate remedy to cure the prejudice raised by the improper question and answer. The trial justice sustained the objection and instructed the jury to disregard both the question and the answer. Consequently the trial justice committed no error since he gave all the relief which was requested and cannot be faulted for failing to give relief by way of a mistrial in the absence of a request therefor. *See State v. Martinez,* 651 A.2d 1189, 1196–97 (R.I.1994); *State v. Rivera,* 640 A.2d 524, 526–27 (R.I.1994). If this were the sole issue raised on appeal, a new trial could not be ordered since the issue was not properly preserved for presentation to this court. We review the actions of the trial justice, not the actions of the prosecutor. Our expression of opinion on this issue is for the guidance of the Superior Court in the new trial to which the defendant will be entitled by reason of the other issues considered earlier in this opinion.

For the foregoing reasons the defendant's appeal is sustained, and the judgments entered in the Superior Court are vacated. The papers in the case may be remanded to the Superior Court for a new trial.