COMMISSIONER OF ADMINISTRATIVE SERVICES *v.*
WILLIAM LEHERISSIER
(AC 18465)

Foti, Landau and Mihalakos, Js.

Argued January 19—officially released May 16, 2000

*Gary G. Williams*, assistant attorney general, with whom were *Edward F. Reynolds*, assistant attorney general, and, on the brief, *Richard Blumenthal*, attorney general, for the appellant (plaintiff).

*Barry T. Pontolillo*, for the appellee (defendant).

*Opinion*

MIHALAKOS, J. The plaintiff, the state of Connecticut, commissioner of administrative services, appeals from the judgment of the trial court denying the plaintiff's claim for reimbursement for public assistance payments made on behalf of the decedent, Sally Doran. The dispositive issue on appeal is whether the trial court improperly found that an agreement between Doran and her son, the defendant William LeHerissier, constituted an irrevocable funeral fund. We reverse the judgment of the trial court.[1]

The trial court could have reasonably found the following facts. In 1988, Doran was placed in a convalescent home, at which time the plaintiff began making public assistance payments on her behalf. The payments continued until Doran died on April 18, 1994, and totaled $223,901.71. At the time of Doran's death, her estate consisted solely of a NICOR stock certificate

---

[1] The plaintiff raised three additional claims on appeal, namely, that the trial court (1) failed to find that the defendant exercised improper control and dominion over the assets of the legal representative estate of the decedent under a lapsed power of attorney (2) failed to find that the defendant committed conversion (3) improperly applied a standard of judicial equity to relieve the defendant of liability for his conduct. We need not address these issues because the defendant's noncompliance with General Statutes § 42-207 is dispositive of this appeal.

valued at $10,416.11.[2] This stock certificate was in the possession of the defendant pursuant to a power of attorney. Prior to her death, Doran told the defendant that, upon her death, he was to liquidate the stock and pay for her funeral and other expenses attendant to her funeral and to remit the balance to the plaintiff.

Upon Doran's death, the defendant liquidated the stock, paid for Doran's funeral expenses in the amount of $4561.28 without the participation of a licensed funeral establishment, paid attorney's fees in the amount of $646.77 and remitted the balance of $5208.06 to the plaintiff. An affidavit in lieu of administration was filed with the Meriden Probate Court, which authorized the sale of the stock, but did not issue any order of distribution. The defendant received nothing from his mother's estate.

The plaintiff brought an action against the defendant for reimbursement of the payments, claiming that the defendant should have paid only $1200 for funeral expenses[3] and the plaintiff should have received the remaining balance. The trial court found in favor of the defendant, and this appeal followed.

The plaintiff claims that the court improperly found that Doran created an irrevocable agreement with the defendant for the payment of her funeral expenses pursuant to General Statutes § 42-207.[4] We agree.

[2] No evidence was adduced at trial as to the value of the stock prior to her death.

[3] General Statutes § 17b-84 provides in relevant part: "Upon the death of any beneficiary, under the state supplement . . . program the commissioner [of social services] shall order the payment a sum not to exceed . . . one thousand two hundred dollars . . . as an allowance toward the funeral and burial expenses of such deceased. . . ."

[4] General Statutes (Rev. to 1993) § 42-207 provides: "An irrevocable funeral contract may be entered into in which the amount held in escrow may be disbursed only upon the death of the beneficiary provided such a contract does not exceed [$4800] and that all interest accumulates to the escrow account and is also inaccessible to the beneficiary. Such irrevocable funeral contracts may be transferred from one funeral service establishment to another upon request of the beneficiary. The purchase of an irrevocable

It is the defendant's contention that the delivery of the stock to him coupled with the granting of the power of attorney created an irrevocable funeral account pursuant to § 42-207. Our analysis of whether § 42-207 permits the creation of a private irrevocable trust agreement without the participation of a licensed funeral establishment is guided by well established principles of statutory construction. "Statutory construction is a question of law, and therefore our review is plenary." *Davis* v. *Norwich*, 232 Conn. 311, 317, 654 A.2d 1211 (1995). "[O]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) *State* v. *Burns*, 236 Conn. 18, 22–23, 670 A.2d 851 (1996).

Section 42-207 provides for the creation of an irrevocable funeral contract that can be transferred from one funeral service establishment to another upon request by the beneficiary.[5] Section 42-207 must be read in conjunction with General Statutes § 42-201, which provides in relevant part: "No person, firm or corporation shall enter into a funeral services contract to provide such services, property or merchandise unless such person, firm or corporation is licensed in accordance with the provisions of Chapter 385."[6]

The trial court acknowledged, in its memorandum of decision, that the defendant's claim is governed by

funeral contract shall not preclude an individual from purchasing other funeral contracts that are revocable."

[5] Since the contract is "irrevocable," it is inaccessible to the beneficiary.

[6] Chapter 385 sets forth requirements and procedures regarding embalmers and funeral directors.

§ 42-207 but then, failing to address the issue, concluded that because the defendant *thought* he was in compliance with § 42-207, such an agreement had, in fact, been created. Merely thinking that he had acted in compliance with the statute, however, cannot obviate the intention of the statute. There must be compliance, and in this case compliance means that creation of an irrevocable contract must be with a licensed funeral establishment. To hold otherwise would render § 42-201 meaningless and permit avoidance of a funeral contract with a licensed funeral establishment.

No such contracts, formalities or prior payments were made with any licensed funeral establishment, and no irrevocable funeral services contract was entered into prior to the payment of public assistance, which began in 1988. Furthermore, Doran never created a legally valid prepaid irrevocable funeral account. Since neither Doran nor the defendant fulfilled the requirements of § 42-207, the trial court improperly found that the agreement between them constituted an irrevocable funeral fund.

The defendant maintains that, pursuant to § 42-207, he was authorized to pay up to $4800[7] for funeral expenses. Since an irrevocable funeral fund did not exist, General Statutes § 17b-84 applies. Section 17b-84 governs the amount that may be expended for funeral expenses for beneficiaries of state assistance. The statute permits "as an allowance toward the funeral and burial expenses" a sum not to exceed $1200. The defendant's expenditure of $4561.28 exceeded the $1200 statutory limit by $3361.28, and the plaintiff is entitled to reimbursement in that amount.

The judgment is reversed and the case is remanded with direction to render judgment for the plaintiff in

[7] Section 42-207 has since been amended to allow up to $5400 for funeral expenses.

the amount of $3361.28 plus interest, attorney's fees and costs.

In this opinion the other judges concurred.