[Crim. No. 30827. Second Dist., Div. Four. Feb. 28, 1978.]

THE PEOPLE, Plaintiff and Respondent, v.
MELVIN MAXWELL et al., Defendants and Appellants.

## COUNSEL

Ruth Ohanession and Rosana M. Selesnick, under appointments by the Court of Appeal, for Defendants and Appellants.

Evelle. J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Norman H. Sokolow, William R. Pounders and Lawrence P. Scherb II, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BIGELOW, J.***—By information defendants were charged with burglary in violation of Penal Code section 459. Each defendant entered a plea of not guilty. Each defendant made a motion to suppress evidence under Penal Code section 1538.5, which was denied. After trial by jury each defendant was found guilty of burglary of the first degree. The court denied probation and sentenced each defendant to state prison. Each defendant appeals from his respective judgment. We reverse the judgments.

Probable cause for the arrest of defendants for this burglary was established by the testimony of Officers Bach and Aguilar. Officer Bach's information concerned two prior burglaries for which defendant Maxwell had been arrested. Officer Aguilar's testimony was of having received information of defendant Maxwell's prior criminal activities from a member of his burglary team who had received that information

---

*Assigned by the Chairperson of the Judicial Council.

from Officer Bach, plus his team's observations of defendant Maxwell's activities that led to the arrest of these two defendants near the scene of the currently charged burglary.

Officer Bach had investigated the two earlier burglaries. He went to the scene of each, observing that the doorknob had been twisted with "channel locks" as the means of forced entry. He examined the "channel locks" that were in defendant Maxwell's possession at the time of his earlier arrest. He was present when the two victims identified their respective property as items taken in those burglaries. Defendant Maxwell was driving a certain Camaro Chevrolet when arrested and this loot had been found in the car. He talked to investigators from other police agencies in Los Angeles and Orange counties concerning "channel lock" type burglaries that had occurred recently in apartment complexes in their respective areas.

In the middle of July 1976, Officer Bach contacted the South Bay burglary team and talked to a lieutenant and to Sergeant Murphy. He related to them a summary of the foregoing facts and added his conclusions about defendant Maxwell's activities. His information included a description and a photograph of defendant Maxwell along with the license number of the Camaro Chevrolet. He also told them that defendant Maxwell was working with an unknown accomplice.

Officer Aguilar, having received this information from Sergeant Murphy, commenced surveillance of defendant Maxwell. He followed him from his home in Long Beach, on August 5, 1976, to an area in Los Angeles containing numerous apartment buildings. He saw this defendant enter several different apartment complexes, stay for less than five minutes in each and then exit, going to the next one. This activity continued for one and one-half hours.

On August 10, 1976, Officer Aguilar followed defendant Maxwell from Long Beach to Compton where he picked up defendant Thomas. They then drove to Manhattan Beach, stopping in front of some apartment complexes. Officer Aguilar and six other members of his team took up various positions of observation of the area. It was approximately 8:30 p.m. and Officer Aguilar was parked approximately 200 yards away using 7 x 50 binoculars to observe the activities. He saw defendant Maxwell place in his pocket an item that appeared to be "channel lock" pliers.

After entering and leaving two apartment complexes, defendant Maxwell entered a third complex while defendant Thomas walked back

and forth in front. After about five minutes defendant Thomas entered the same complex and returned carrying a large item that appeared to be a television set. He placed this item behind some bushes and returned to the complex. He made two more trips carrying out items and placing them beside the first item. Defendant Maxwell then exited the complex and joined defendant Thomas. Both defendants were looking up and down the street as they loaded the items in the Camaro Chevrolet defendant Maxwell was driving. The officers had seen no lights come on in the complex.

Feeling that a burglary had just been committed, officers of the team stopped and arrested the defendants a short distance away. After the arrest Officer Aguilar returned to the complex, where he observed, at one apartment, broken glass louvers, louvers missing and fresh scratches on the doorknob, all indicating a forced entry into the apartment.

Defendants' contentions are two-fold:

(1) The trial court was duty bound to have taken mandatory judicial notice of the illegality of the arrest of defendant Maxwell for the two prior burglaries and therefore to suppress all of that information in the probable cause equation for the current arrest.

(2) In any event the officers did not have probable cause to arrest the defendants and the loot from the current burglary should have been suppressed as well as the evidence from the scene.

### Probable Cause From The Prior Arrest

While Officer Bach was testifying on direct examination and in response to questions from the prosecutor he stated the disposition of the Los Angeles County case involving the two prior burglaries as follows: "I indicated that we lost this case on a technicality, because the officers didn't have probable cause to stop and detain the defendant in the middle of the night." Coming from the People's own witness, we hold that this testimony was sufficient to establish that the prior arrest was without a warrant and prima facie unlawful.

The initial burden to raise the issue of illegally obtained evidence by a prima facie showing is on the defendant. (*People v. Prewitt* (1959) 52 Cal.2d 330, 335 [341 P.2d 1]; *People v. Carson* (1970) 4 Cal.App.3d 782, 786 [84 Cal.Rptr. 699].)

Evidence Code section 664 states "It is presumed that official duty has been regularly performed. This presumption does not apply on an issue as to the lawfulness of an arrest if it is found or otherwise established that the arrest was made without a warrant."

"In the absence of evidence to the contrary, it is presumed that the officers acted legally . . . . When, however, the question of the legality of an arrest . . . is raised . . . , the defendant makes a prima facie case when he establishes that an arrest was made without a warrant . . ., *and the burden then rests on the prosecution to show proper justification.*" (Italics added.) (*Badillo* v. *Superior Court* (1956) 46 Cal.2d 269, 272 [294 P.2d 23]; see also *People* v. *McKinnon* (1972) 7 Cal.3d 899, 905 [103 Cal.Rptr. 897, 500 P.2d 1097].)

Officer Bach was not the arresting officer nor had he been present at the time of that arrest. No facts were ever elicited concerning the probable cause then existing for the prior arrest nor the details of how that arrest occurred. At this juncture in the trial defendant Maxwell's attorney then stated, "Let's bring in the court record, a transcript." This was never done by either side. The *defense* orally requested the trial court to take judicial notice of the court records of that case, but never supplied or offered to supply the trial court with any further information.

## JUDICIAL NOTICE

Records of a court of this state come within the provisions of subdivision (d)(1) of section 452 of the Evidence Code as permissive or discretionary matters that may be judicially noticed by the trial court. When a request to take judicial notice of such a record is made, even orally as was the case here, section 453 then makes it conditionally mandatory that the court do so. The conditions are: (a) giving sufficient notice to the adverse party, etc., and (b) furnishing the court with sufficient information to enable it to take judicial notice of the matter.

The burden is on the party requesting judicial notice to supply the court with sufficient, reliable and trustworthy sources of information about the matter. Resort to accurate sources of information is necessary to enable a court to take judicial notice of many matters. A court is not required to seek out on its own initiative indisputable sources of information. Whether information supplied by a party is sufficient for the purpose will vary from case to case. In some cases the original source

documents may be required to provide the court with *sufficient* information. If the information supplied is *not* sufficient the trial judge is entitled to refuse to take judicial notice of the matter requested. (Jefferson, Cal. Evidence Benchbook (Cont.Ed.Bar 1972) Judicial Notice, § 47.4.)

 We hold that the record in this case indicates that both sides failed to furnish the court with sufficient information to enable it to take judicial notice of these court records. The court was not mandated to take judicial notice and properly refused to do so.

### USE OF EVIDENCE FROM PRIOR ARREST AS PROBABLE CAUSE FOR CURRENT ARREST

 With the state of the record as indicated, we hold that all of Officer Bach's information concerning the two prior burglaries was tainted by the illegal prior arrest. This information reached Officer Aguilar through "official channels" and the requirements of that rule were fully met in the case at bar. (*People* v. *Madden* (1970) 2 Cal.3d 1017, 1021 [88 Cal.Rptr. 171, 471 P.2d 971.) However, such information was "fruit of the poisonous tree," that is the illegal prior arrest, and the police cannot add this to the probable cause equation.

"[T]his is not the case envisioned by this Court where the exclusionary rule has no application because the Government learned of the evidence 'from an independent source,' [citation]; nor is this a case in which the connection between lawless conduct of the police and the discovery of the challenged evidence has 'become so attenuated as to dissipate the taint.' [Citation.] We need not hold that all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' " (*Wong Sun* v. *United States* (1963) 371 U.S. 471, 487-488 [9 L.Ed.2d 441, 455, 83 S.Ct. 407].)

"The essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the court, but that it shall not be used at all. Of course this does not mean that the facts thus obtained become sacred and inaccessible. If knowledge of them is gained from an independent source they may be proved like any others, but the knowledge gained by the government's

own wrong cannot be used by it in the way proposed." (*Silverthorne Lumber Co.* v. *United States* (1920) 251 U.S. 385, 392 [64 L.Ed. 319, 321, 40 S.Ct. 182], cited with approval, but distinguished factually in *Lockridge* v. *Superior Court* (1970) 3 Cal.3d 166, 169 [89 Cal.Rptr. 731, 474 P.2d 683]; see also *Agnello* v. *United States* (1925) 269 U.S. 20 [70 L.Ed. 145, 46 S.Ct. 4, 51 A.L.R. 409].)

This is not the factual situation where the tenuous link forged between the illegal arrest and the charged crime is "pure happenstance" as in *Lockridge* v. *Superior Court, supra,* 3 Cal.3d 166 or in *People* v. *McInnis* (1972) 6 Cal.3d 821 [100 Cal.Rptr. 618, 494 P.2d 690]. There is a direct, immediate and necessary causal connection between the unlawful police conduct and the evidence sought to be used for probable cause for the current arrest.

"The Government cannot violate the Fourth Amendment . . . and use the fruits of such unlawful conduct to secure a conviction. [Citation.] Nor can the Government make indirect use of such evidence for its case [citation], or support a conviction on evidence obtained through leads from the unlawfully obtained evidence [citation]. All these methods are outlawed, and convictions obtained by means of them are invalidated, because they encourage the kind of society that is obnoxious to free men." (*Walder* v. *United States* (1954) 347 U.S. 62, 64-65 [98 L.Ed. 503, 506-507, 74 S.Ct. 354]; *People* v. *Taylor* (1972) 8 Cal.3d 174, 181 [104 Cal.Rptr. 350, 501 P.2d 918]; *People* v. *Bilderbach* (1965) 62 Cal.2d 757, 763-764 [44 Cal.Rptr. 313, 401 P.2d 921].)

### REMAINING EVIDENCE AS PROBABLE CAUSE

What now remains are the arresting officers' personal observations of defendant Maxwell's activities before the night of the arrest and their personal observations of both defendants' activities the afternoon and evening of their arrest. These activities were as consistent with innocent activities as with criminal activities. (See *Cunha* v. *Superior Court* (1970) 2 Cal.3d 352 [85 Cal.Rptr. 160, 466 P.2d 704] and also *Remers* v. *Superior Court* (1970) 2 Cal.3d 659 [87 Cal.Rptr. 202, 470 P.2d 11].)

Officer Aguilar's observations indicating a forced entry into the apartment back at the scene of the burglary, were made and reported to the arresting officers *after* the arrests for burglary had already taken place. The testimony is altogether too clear that the officers had not

*detained* the defendants for questioning, but had immediately arrested them and *then* sent one of their team back to the scene to check it out.

We hold that the arresting officers did not have sufficient probable cause to arrest either defendant. The trial court should have granted the Penal Code section 1538.5 motions to suppress the evidence seized at the time of the illegal arrests.

The judgments are reversed.

Kingsley, Acting P. J., and Jefferson (Bernard), J., concurred.

A petition for a rehearing was denied March 15, 1978, and respondent's petition for a hearing by the Supreme Court was denied May 18, 1978. Clark, J., and Richardson, J., were of the opinion that the petition should be granted.