[No. B025967. Second Dist., Div. Five. Mar. 14, 1991.]

THE PEOPLE, Plaintiff and Respondent, v.
RONALD O. COE et al., Defendants and Appellants.

[No. B051712. Second Dist., Div. Five. Mar. 14, 1991.]

In re DONALD COE on Habeas Corpus.

[No. B052446. Second Dist., Div. Five. Mar. 14, 1991.]

In re ALAN M. BETTS on Habeas Corpus.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II through IX.

**COUNSEL**

Joseph E. Gerbac, Thomas F. Coleman and John F. M. Rodriguez, under appointments by the Court of Appeal, for Defendants and Appellants.

John K. Van de Kamp and Daniel E. Lungren, Attorneys General, Richard B. Iglehart, Chief Assistant Attorney General, Edward T. Fogel, Jr., Assistant Attorney General, Linda C. Johnson and Roy C. Preminger, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

ASHBY, Acting P. J.—By jury trial appellants Donald Coe, Ronald O. Coe and Alan M. Betts were convicted of one count of conspiracy and nine counts of burglary. (Pen. Code, §§ 182, 459.) Each was sentenced to state prison.

The conspiracy and burglaries involve a sophisticated safecracking scheme. Between November 1983 and April 1984, appellants burglarized

nine commercial establishments in the San Fernando Valley, opening safes in some, and stealing many thousands of dollars worth of money and jewelry. Appellants disabled the telephone alarm systems and used sophisticated techniques and specialized tools to break into the safes.

A mass of evidence produced at a lengthy trial tied appellants to the crimes. In a few cases the victim could identify one or more appellants as having come into the store shortly before the burglary. Tools left at the scene of some of the burglaries were shown to have been possessed by or purchased by one or more of the appellants. At the latest of the charged burglaries, the Lucky supermarket burglary of April 1984, the crime was interrupted by an employee and numerous tools were left behind. Notably, the "steel hawg" saw found at Lucky's was shown to have been purchased by appellant Betts in March 1984 and used to open the safe in the burglary of Ali's Jewelry on April 16, 1984. A magnetic drill holder recovered at Lucky's, which was a necessary instrument to make the precise drill holes in the safe at the burglary of Byron & Co. on November 4, 1983, was purchased by appellants Betts and Donald Coe in October 1983.

Other tools recovered at Lucky's were identified as having been released by the police to appellant Ronald Coe in July 1983 pursuant to a court order in an unrelated 1982 case involving the three appellants.

Pursuant to search warrants executed in 1984, many items of highly incriminating evidence were found at the homes of each of the appellants. In Betts's home, police found books on alarm devices and locks, a radio scanner tunable to police frequencies and in a wallet a handwritten note describing a residence of a coin dealer and the location and type of the dealer's safe therein.

In Ronald Coe's residence police found a lengthy computer printout of jewelry stores, with notations in handwriting strongly indicated as Betts's, detailing the type of alarm systems found at those jewelry stores. In addition, police found in Ronald Coe's residence a safe with a door having a hole drilled in it, a torch kit of the type purchased by Betts and Donald Coe shortly after their purchase of the magnetic drill holder, a drawing of a lock and a handbook on alarm systems.

At Donald Coe's residence police found notes detailing how to drill open a Star brand safe and how to open a safe by manipulation.

Appellants raise numerous contentions on appeal and on petitions for writs of habeas corpus.[1] Finding no merit to these contentions, we affirm the judgments and deny the petitions. In the published portion of this opinion, part I, we reject appellants' contentions that the 1984 search warrants should have been quashed and that all evidence identifying tools as having been released to appellants in 1983 should have been suppressed as "fruit of the poisonous tree." In the nonpublished portion, parts II through IX, we reject miscellaneous contentions.

I

### SEARCH AND SEIZURE

■ Appellants moved to quash the 1984 search warrants and suppress all evidence from those searches, on the ground that probable cause for issuance of those warrants was based in part upon inadmissible evidence tainted by a prior illegal search. The affiant for the 1984 search warrants was Los Angeles Police Officer Troy Galloway. The affiant related that he recognized a crowbar which was left at the scene of the February 19, 1984 burglary of Woodland Hills Village Coin, and nine other tools left at the scene of the Lucky market burglary of April 30, 1984. Officer Galloway had been involved in a prior unrelated case in which these same three appellants were charged. In connection with the earlier case, Officer Galloway had executed a search warrant on April 27, 1982, and seized numerous tools from the home of Ronald Coe. The search warrants in the prior case were quashed in January 1983, and the property seized pursuant to those warrants was ordered to be returned to the defendants in July 1983. Prior to returning the tools, Officer Galloway and his partner Sergeant Ed Willis carefully marked or stamped the tools with small identifying marks and took photographs of them. The marked tools were then released to the defendants. The signature on the property release form was that of Ronald Coe, but the address listed was that of Donald Coe.[2]

By comparing the tools abandoned during the 1984 burglaries with his records, Officer Galloway determined they were the same tools which had

---

[1] After the filing of the three appellant's opening briefs, appellant Donald Coe in propria persona filed a petition for writ of habeas corpus on July 20, 1990, seeking to raise additional issues not raised by his appointed counsel. On July 25, 1990, we ordered that Donald Coe's petition be considered concurrently with this appeal. Respondent's brief was filed on November 20, 1990. On December 12, 1990, Donald Coe in propria persona requested an extension of time to January 10, 1991, to review respondent's brief and consider a reply, which request was granted. On December 18, 1990, Donald Coe's appointed counsel requested an extension of time to December 31, 1990, to file a reply brief, which request was granted. Counsel filed the reply brief late, on January 14, 1991. On August 22, 1990, appellant Alan Betts in propria persona filed a petition for writ of habeas corpus, also considered concurrently herewith, relating to postjudgment sentence issues.

[2] Ronald and Donald Coe are twins.

been released to Ronald Coe in July 1983. These circumstances were related in Officer Galloway's affidavits for the 1984 search warrants. The magistrate issued the warrants and, when appellants moved in the trial court to quash the 1984 warrants as fruit of the earlier illegal seizure, the trial court denied their motion.

We hold the trial court properly denied appellants' motion on the ground that the 1984 warrants were not the product of exploitation of a prior illegality. Appellants' commission of new crimes and abandonment of tools were intervening independent acts attenuating any taint between the prior illegality and the evidence subsequently obtained.[3]

■ The general principles governing the subsequent exploitation of illegally seized evidence are familiar. Not all evidence is " 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' " (*Wong Sun* v. *United States* (1963) 371 U.S. 471, 488 [9 L.Ed.2d 441, 455, 83 S.Ct. 407].) Although sophisticated argument may prove a causal connection between information obtained illegally and evidence subsequently offered, such connection may have become so attenuated as to dissipate the taint. (*Nardone* v. *United States* (1939) 308 U.S. 338, 341 [84 L.Ed. 307, 311-312, 60 S.Ct. 266]; *People* v. *McInnis* (1972) 6 Cal.3d 821, 825 [100 Cal.Rptr. 618, 494 P.2d 690].) An intervening independent act by the defendant, if sufficiently an act of free will, may produce the requisite degree of attenuation. (*People* v. *Sesslin* (1968) 68 Cal.2d 418, 428 [67 Cal.Rptr. 409, 439 P.2d 321].)

■ Appellants contend there is a direct link between seizure of the tools in 1982 and the recognition of those same tools in 1984. We conclude significant intervening circumstances attenuate that link.

■ The commission of a new crime by the defendant will ordinarily be an intervening independent act of the defendant's free will which purges the primary taint of prior police misconduct. (*People* v. *Guillory* (1960) 178 Cal.App.2d 854, 856 [3 Cal.Rptr. 415, 80 A.L.R.2d 1077]; *People* v. *Eastmon* (1976) 61 Cal.App.3d 646, 653-654 [132 Cal.Rptr. 510]; *People* v. *Caratti* (1980) 103 Cal.App.3d 847, 851-852 [163 Cal.Rptr. 265].) In *People* v. *Caratti, supra,* an officer illegally searched the defendant's car and found

---

[3] Because we reach the merits of the attenuation argument, we do not consider alternative grounds for the trial court's ruling, including the holding that each appellant lacks standing to challenge evidence seized at any other appellant's residence.

marijuana. The defendant was not prosecuted for that offense, but the officer who conducted the search encouraged a third person to act as an informant. The informant introduced an undercover officer to the defendant, who subsequently sold illegal drugs. The defendant argued the undercover sale was the product of the prior unlawful search and seizure. The court rejected this contention, finding that the commission of the new offense was a voluntary intervening independent act which dissipated the taint. Similarly in *People* v. *Eastmon, supra*, 61 Cal.App.3d 646, the police unlawfully entered the residence of two suspects and thereafter encouraged the suspects to make an undercover buy from the defendant. The court held that although there was a factual, "but for" connection between the illegal search and the subsequent criminal conduct by the defendant, there was no "exploitation" within the meaning of *Wong Sun*. In *People* v. *Guillory, supra*, 178 Cal.App.3d 854, the defendant was illegally arrested, whereupon he attempted to bribe the police officer to let him go. The attempted bribe was held not to be a product of the illegal arrest; "it came spontaneously from defendant, not only at the house where he was arrested but also at the police station. Only the intervening unregenerate heart of defendant could have produced it."

The authorities on which appellants primarily rely are distinguishable. In *Silverthorne Lumber Co.* v. *United States* (1920) 251 U.S. 385, 391 [64 L.Ed. 319, 321, 40 S.Ct. 182, 24 A.L.R. 1426], the prosecution subpoenaed from the defendants the corporate records which had been previously illegally seized and ordered returned. There was no intervening act by the defendants. In *Davis* v. *Mississippi* (1969) 394 U.S. 721, 727 [22 L.Ed.2d 676, 681, 89 S.Ct. 1394], the illegal police conduct, rounding up 24 suspects without probable cause, was for the very purpose of obtaining the suspects' fingerprints, the evidence subsequently sought to be suppressed. *Davis* was distinguished in *People* v. *McInnis, supra*, 6 Cal.3d at page 825, footnote 1, as a case where the illegal action of the police was part of the investigation of the very crime as to which the evidence was discovered. Here, there is no suggestion that the police illegally obtained the 1982 warrant *in order* to mark the tools for future investigation.

In *McInnis*, a booking photograph was taken after an illegal arrest. The photograph remained in police files and was used to identify the defendant in connection with a subsequent unrelated crime. The court held the illegal arrest had not been exploited. The court said a contrary interpretation would tend to give to an illegally arrested person an unwarranted immunity to commit new crimes in the future. (6 Cal.3d at p. 826; see also *United States* v. *Bailey* (11th Cir. 1982) 691 F.2d 1009, 1017.)

Similarly here, "but for" the prior illegal seizure the police would not have had the opportunity to examine the tools, but this is not sufficient

to show exploitation of the illegality. (*People* v. *McInnis, supra*, 6 Cal.3d 821.) The illegal seizure of the tools in 1982 does not give appellants immunity to use those same tools to commit new crimes. In *United States* v. *Friedland* (2d Cir. 1971) 441 F.2d 855, 861, the court stated, "[T]o grant life-long immunity from investigation and prosecution simply because a violation of the Fourth Amendment first indicated to the police that a man was not the law-abiding citizen he purported to be would stretch the exclusionary rule beyond tolerable bounds."

Appellants cite and rely on *People* v. *Maxwell* (1978) 78 Cal.App.3d 124 [144 Cal.Rptr. 95]. Although we disagree with *Maxwell* and would not be inclined to follow it, we need not say more in that regard because it is obviously distinguishable from the instant case. Maxwell was illegally stopped and arrested in his car, in possession of loot from two burglaries and channel-lock pliers which had evidently been used to force entry. The defendant could not be prosecuted for the earlier burglaries because of the illegal seizure; he was kept under surveillance, however, by officers who were aware of his automobile and his prior use of channel-lock pliers. Through binoculars an officer observed the defendant, with channel-lock pliers in his pocket, enter an apartment at night, remove a television and other property without turning on the lights, and load the items into his car. The court held the subsequent arrest was illegal because the prior information about the pliers could not be used to support probable cause, and that without this information the defendant's activities were consistent with innocence. (*Id.* at pp. 131-132.) *Maxwell* is distinguishable because here appellants not only completed new burglaries with the same tools, but also abandoned those tools at the scenes of three new burglaries.[4]

Appellants suggest that we consider three factors mentioned in *Brown* v. *Illinois* (1975) 422 U.S. 590, 603-604 [45 L.Ed.2d 416, 427, 95 S.Ct. 2254] to determine whether an act of free will of appellants purged the taint of the previous illegality. *Brown* is not closely analogous on its facts, because it involved admissibility of the defendant's confession following an illegal arrest, but in any event its analysis does not support appellants. The factors mentioned in *Brown* were (1) the proximity of the arrest and the confession, (2) the presence of intervening circumstances, and (3) the purpose and flagrancy of the official misconduct. Here the initial misconduct is that in April 1982 police seized evidence pursuant to a search warrant which was subsequently quashed, apparently for lack of probable cause.[5] Such conduct

---

[4] Appellants contend abandonment is not an issue because they do not challenge the seizure of the abandoned tools, they challenge the identification of the tools as having been released to appellants in 1983. Abandonment has additional relevance, however, as evidence of additional intervening independent acts by appellants attenuating the link to the prior illegality.

[5] The record provides no details why the 1982 search warrant was quashed.

was not at all flagrant. Second, it occurred *two years* before appellants' commission of the Lucky market burglary of April 1984, a very lengthy time gap. Third, the circumstances were clearly independent and intervening, in that appellants committed new crimes while completely free of police custody during this period and abandoned some of the tools at the scenes of the crimes.

Appellants alternatively suggest that it was the marking of the tools in July 1983 which constituted the illegal police conduct of which appellants complain. This contention is not persuasive. The placing of tiny identifying marks on the tools was not independently a violation of the Fourth Amendment or appellants' right to privacy. In *United States* v. *Butts* (5th Cir. 1984) 729 F.2d 1514, police installed a monitoring device on the defendant's airplane pursuant to a warrant, but thereafter improperly left the beeper on the plane beyond the terms of the warrant. The court held this conduct did not require exclusion of marijuana and other evidence found in the airplane after it landed. The court stated "The purpose of the exclusionary rule is to deter improper police conduct that violates a person's reasonable expectation of privacy under the Fourth Amendment. It does not purport to reach all illegal conduct by officers and is not applicable in the circumstances present here . . . . The signal from the then unwarranted beeper did nothing more than enhance the customs official's legal right to observe the aircraft's public movements. No Fourth Amendment right was infringed." (*Id.* at pp. 1517-1518, fns. omitted.) Here too, the marking of the tools did not independently violate the Fourth Amendment and constituted at most a minor trespass on private chattels.

Although the markings assisted the officers to identify the tools later this is not controlling in determining whether appellants' independent intervening acts purged the taint from the initial illegal seizure. For the purpose of this analysis the marking is not significantly different from mere careful observation of distinguishing characteristics.[6]

*Taylor* v. *State* (1976) 92 Nev. 158 [547 P.2d 674] represents a strikingly similar case. In *Taylor*, a woman was raped on August 13 at a dwelling which she identified to police. The next day the police entered that residence, arrested the defendant Taylor, and searched the premises. They took photographs of a mattress and blanket in the residence. That search was held to be unlawful because it was conducted without a warrant.

Two months later, on October 16, 1972, the nude body of a woman was discovered in an abandoned mine shaft, wrapped in a pink blanket and

---

[6] Indeed, in this case one tool was identified by a serial number.

covered with a twin bed mattress. A comparison was made between the mattress found in the mine shaft and the mattress depicted in the photograph of Taylor's bedroom. It was determined that the mattresses were the same.

Upon Taylor's conviction of the murder, the court rejected his contention that evidence relating to the mattress was inadmissible. The court pointed out that the prior illegal search was directed at a crime completely unrelated to the crime committed two months later for which the defendant was convicted. "Under the circumstances of this case, the purpose of the exclusionary rule would not be served by excluding the illegally seized evidence. The murder of Vicki Price was so remotely connected to the unlawful search incident to Taylor's arrest for the crime of rape that application of the exclusionary rule to exclude the evidence obtained as a result of the search could have no conceivable deterrent effect on future police misconduct of the type involved here. It would be one thing to bar the photograph of the mattress if Taylor was being tried for the rape, it is quite another to bar its use for an unrelated murder committed several months subsequent to the search." (547 P.2d at pp. 676-677.)

Finally, appellants also contend that the literal language of Penal Code section 1538.5, subdivision (d) prevents any use of the previously seized tools in these proceedings, even though involving a different crime. They emphasize the language of the statute that "[i]f a search or seizure motion is granted pursuant to the proceedings authorized by this section, the property or evidence shall not be admissible against the movant *at any trial or other hearing* . . . ." (Italics added.) Contrary to appellants' contention, this language has been construed to be limited to a trial or hearing in the particular cause of action in which the suppression ruling is made, or the subsequent filing of the identical charges. (*People* v. *Brewster* (1986) 184 Cal.App.3d 921, 928-929 [229 Cal.Rptr. 352].) In *Brewster* the court held evidence which had been suppressed in an earlier trial on an unrelated matter could nevertheless be considered for the limited purpose of sentencing the defendant for a subsequent crime. The court relied in part on the rule of *People* v. *Caratti, supra,* 103 Cal.App.3d 847, 852, that "[t]he voluntary commission of an offense subsequent to the illegal police conduct is sufficient to dissipate the taint . . . ." (*People* v. *Brewster, supra,* 184 Cal.App.3d at pp. 927-928.)

We conclude therefore that the trial court properly denied the motions to suppress evidence, because any taint from the prior illegal search was dissipated by intervening independent acts of appellants.

II-IX*

· · · · · · · · · · · · · · · · · · · · · · · ·

## X

### Disposition

The judgments are affirmed. The petitions for writ of habeas corpus are denied. As to appellant Alan M. Betts, the trial court is directed to send the Department of Corrections a corrected abstract of judgment reflecting the February 26, 1987, modification of sentence that four months is stayed pursuant to Penal Code section 1170.1, subdivision (a).

Grignon, J., and Epstein, J.,† concurred.

A petition for a rehearing was denied March 25, 1991, and appellants' petitions for review by the Supreme Court were denied May 29, 1991.

---

* See footnote, *ante*, page 526.
† Assigned by the Chairperson of the Judicial Council.