Filed 12/12/24  P. v. Scott CA2/2

Opinion following transfer from Supreme Court

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B329087 |
| Plaintiff and Respondent, | (Los Angeles County |
| | Super. Ct. No. YA029914) |
| v. | |
| DONYELL DEVONNE SCOTT, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Nicole C. Bershon, Judge.  Conditionally affirmed and remanded with directions.

Ahrony Appeals Law Group and Orly Ahrony for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and Thomas C. Hsieh, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \*

Donyell Devonne Scott (defendant) appeals from his Penal Code section 1172.75 resentencing.[1]  The trial court conducted a full resentencing and imposed a 27-year prison sentence, which was 17 years less than originally imposed.  On appeal, defendant argues that he is entitled to an even lower sentence.  He challenges nearly every aspect of the resentencing.  In a nonpublished opinion issued on May 2, 2024, we vacated the judgment and remanded the matter for a full resentencing in light of the trial court's failure to strike a five-year sentencing enhancement pursuant to section 1385, subdivision (c).  Defendant filed a petition for review before the California Supreme Court, which was held pending the resolution of *People v. Walker*, S278309.  On October 23, 2024, the California Supreme Court transferred this case back to this court with directions to vacate our decision and reconsider it in light of *People v. Walker* (2024) 16 Cal.5th 1024 (*Walker*).  After soliciting supplemental briefing from the parties, we conditionally affirm the sentence but remand for the trial court to exercise the broader range of discretion that *Walker* accords a trial court under section 1385, subdivision (c).

---

[1]     All further statutory references are to the Penal Code unless otherwise indicated.

2

**FACTS[2] AND PROCEDURAL BACKGROUND**

## I.  Underlying Crime

On July 21, 1996, defendant belonged to the Rollin' 60s Crips gang.  Early that morning, he and his friend Duprees Green (Green) were having breakfast at a Norms restaurant in Inglewood.  Four people—Adan Rios (Rios), Raymond Banks (Banks), Marcus Kimble (Kimble), and Andrew Young (Young)— walked into the restaurant; Rios and Banks belonged to a rival gang.

Rios and Kimble approached the booth where defendant and Green sat, and started up a conversation.  Kimble slid into the booth next to Green and put his arm around Green's shoulder, which made Green uncomfortable.  Soon thereafter, Rios, who was still standing, punched Green several times, grabbed defendant's sandwich, and took a bite.

Defendant pulled out a gun and shot Rios in the face.  The shooting prompted the restaurant's patrons to run for the doors.

With gun still in hand, defendant chased after Kimble, Banks, and Young.  After appearing to pull back the top of the gun in a motion similar to reloading, he fired six shots in the rival gang members' direction, hollering, "I'm going to kill you mother fuckers too."

Rios later died from the shotgun wound to the face.

## II.  Trial and Original Sentencing

A jury convicted defendant of the voluntary manslaughter of Rios (§ 192, subd. (a)) and the attempted murder of Banks (§§

---

[2]  Consistent with the applicable standard of review, we have construed the facts in the light most favorable to the ruling below.

664, 187, subd. (a)).[3] As to both counts, the jury found true the allegation that defendant personally used a firearm (§ 12022.5, subd. (a)). The jury did not find that the attempted murder had been premeditated; however, the jury necessarily rejected the defense theory of provocation (because provocation would have precluded the jury's finding of intent to kill necessary for attempted murder and dictated a verdict of attempted voluntary manslaughter). Defendant thereafter admitted his 1991 conviction for robbery (§ 211) was a prior "strike" within the meaning of our "Three Strikes" law (§§ 667, subds. (b)-(i), 1170.12) as well as a prior serious felony (§ 667, subd. (a)); defendant also admitted that he had served two prior prison terms (§ 667.5, subd. (b)).

The trial court sentenced defendant to 44 years in state prison. The court imposed a sentence of 32 years in prison on the voluntary manslaughter count (thereby making that count the principal term). The 32-year sentence was comprised of a 22-year base term (that is, a high term of 11 years, doubled due to the prior strike) plus 10 years for the firearm enhancement. For the attempted murder count, the court imposed a consecutive six-year prison term, comprised of a base term of 56 months (which was one-third of the midterm sentence of attempted murder [that is, 28 months], doubled due to the prior strike) plus 16 months for the firearm enhancement (which was one-third of the midterm sentence for that enhancement). The court then imposed a consecutive five-year term for the prior serious felony conviction and a consecutive one-year term for the prior prison term.

---

[3]    This verdict occurred at a retrial after the jury at the first trial was unable to reach a verdict.

4

This court affirmed defendant's conviction and sentence on direct appeal. (*People v. Scott* (July 21, 1999, B119168) [nonpub. opn.].)

## III. Resentencing

On January 10, 2022, defendant filed a motion for recall of sentence pursuant to what is now section 1172.75.[4]  Although the trigger for the application of section 1172.75 is the existence of a one-year enhancement for the prior prison term, that section obligates trial courts to undertake a full resentencing of eligible defendants to account for "any other changes in law that reduce sentences or provide for judicial discretion."  (§ 1172.75, subd. (d)(2); *People v. Monroe* (2022) 85 Cal.App.5th 393, 402.)  After entertaining exhaustive briefing, which included three additional briefs by defendant and two oppositions by the People, the trial court conducted a full resentencing hearing on December 13, 2022.

The trial court imposed a 27-year prison sentence.  The court imposed a sentence of 18 years on the attempted murder count (thereby making that count the principal term).  The 18-year sentence was comprised solely of the base term (that is, the high-end term of nine years, doubled due to the prior strike).  For the voluntary manslaughter count, the court imposed a consecutive four-year sentence comprised of a base term of four years (which was one-third of the midterm for voluntary manslaughter [that is, two years], doubled due to the prior strike).  The court then imposed a consecutive five-year sentence

---

[4]     At the time the motion was filed, our Legislature had yet to renumber the section from section 1171.1 to section 1172.75. (Compare Stats. 2021, ch. 728, § 3 with Stats. 2022, ch. 58, § 12, eff. June 30, 2022.)

for the prior serious felony conviction. The court did not impose any time for the firearm enhancement or the one-year prior prison term. Shortly before the conclusion of the resentencing hearing, defendant for the first time asked the trial court to dismiss his prior strike conviction under *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497, but the trial court denied the request as untimely because defendant had not raised the issue in any of his four prior filings or earlier in the hours-long resentencing hearing.

### IV. Appeal

Defendant filed this timely appeal.

## DISCUSSION

Defendant attacks nearly every aspect of his resentencing. We generally review criminal sentencing for an abuse of discretion (*People v. Panozo* (2021) 59 Cal.App.5th 825, 837), but review subsidiary factual findings for substantial evidence (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1143), subsidiary legal questions de novo (*People v. Tirado* (2022) 12 Cal.5th 688, 694), and the application of the law to undisputed facts de novo (*Martinez v. Brownco Construction Co.* (2013) 56 Cal.4th 1014, 1018). In conducting the resentencing, the trial court allowed for extensive argument and often indicated that it was "thinking out loud"; our review focuses on the rationales the trial court ultimately articulated rather than its interim musings.[5]

---

[5] We accordingly reject defendant's repeated attempts to characterize the trial court as being confused or internally inconsistent.

## I. Imposition of the High-End Term for Attempted Murder Count

Defendant argues that the trial court erred in imposing the high-end term for the attempted murder count because (1) the court ignored the requirements newly enacted as part of Senate Bill No. 567 (2021-2022 Reg. Sess.) insofar as (a) the aggravating circumstances were not found by the jury or admitted by the defendant, and (b) the aggravating circumstances did not outweigh the mitigating circumstances; and (2) the court erred in not imposing the low-end term, as required by newly enacted Assembly Bill No. 124 (2021-2022 Reg. Sess.).[6]

### A. *The trial court complied with the requirements of Senate Bill No. 567*

Effective on January 1, 2022, Senate Bill No. 567 amended section 1170 to limit a court's discretion to impose the upper term for a crime having a triad of possible sentences. As amended, section 1170 prohibits a trial court from imposing a high-end term unless (1) the circumstances in aggravation "justify the imposition" of the high-end term; *and* (2) as a procedural matter, the facts underlying any aggravating circumstances (a) "have been stipulated to by the defendant," or (b) "have been found true

---

[6] Defendant also seems to suggest that the trial court erred in selecting the attempted murder sentence as the principal term rather than the voluntary manslaughter. However, which of multiple sentences is the principal term is a function of which sentence is the longest rather than a function of some substantive decision by the court. (§ 1170.1, subd. (a) ["The principal term shall consist of the greatest term of imprisonment imposed by the court for any of the crimes, including any term imposed for applicable specific enhancements"].)

beyond a reasonable doubt at trial by the jury or by the judge in a court trial."  (§ 1170, subds. (b)(1) & (b)(2).)

                1.     *Senate Bill No. 567's procedural requirements were met*

In selecting the high-end term for the attempted murder count, the trial court cited two aggravating circumstances— namely, (1) defendant's personal use of a firearm, and (2) defendant's prior prison term.  Each of these qualifies as a "[c]ircumstance[] in aggravation" under the California Rules of Court.  (Cal. Rules of Court, rule 4.421(a)(2) ["defendant . . . used a weapon at the time of the commission of the crime"], (b)(3) ["defendant has served a prior prison term"].)  More to the point, these circumstances satisfy section 1170's procedural requirement because (1) the jury found true the enhancement for defendant's personal use of a firearm, and (2) defendant admitted his prior prison term.

Defendant resists this conclusion.  Specifically, he argues that his use of a weapon cannot constitute an aggravating circumstance to an attempted murder count because the use of a weapon is "inherent" in *every* attempted murder.  He is wrong. (§§ 187, 664, subd. (a); CALCRIM No. 600 [elements of attempted murder do not include the use of a weapon]; accord, *People v. Sanchez* (2001) 24 Cal.4th 983, 988 [murder may be committed without use of a deadly weapon].)

                2.     *Aggravating circumstances justify the high-end term*

In selecting the high term, the court weighed the two aggravating circumstances cited above against several mitigating circumstances—specifically, (1) the trauma defendant suffered as a child, which it found was a factor in the commission of the

8

crime; (2) defendant's relative youth (he was 24 years old); and (3) defendant's "good" conduct while in prison and progress on rehabilitation. The court nevertheless concluded that the aggravating circumstances justified the high-end term.

Defendant offers a panoply of criticisms.

First, defendant argues that the court improperly relied on defendant's reloading or "reracking" of his gun when chasing after Kimble, Banks and Young; he cites *People v. Rodriguez* (1993) 21 Cal.App.4th 232, 241-242 (*Rodriguez*). Although the court cited this circumstance as an "aggravating" circumstance, the court did *not* cite it as one of the aggravating circumstances it was relying upon to justify the high-end term; thus, it is irrelevant to this specific sentencing decision. What is more, *Rodriguez*'s holding that the mere reracking of a gun is not *itself* an aggravating circumstance is irrelevant here, where the trial court here mentioned the reracking in conjunction with defendant's aggravating conduct in firing off six shots in a restaurant filled with people.

Second, and along similar lines, defendant argues at length that there is insufficient evidence that the attempted murder was "vicious" or "callous." Again, this is not a circumstance that the trial court relied upon to justify the high-end term, so it is irrelevant. What is more, substantial evidence supports the trial court's finding that the *attempted murder* was "vicious" or "callous" because defendant, while yelling at a restaurant full of panicked, fleeing patrons that he was "going to kill you mother fuckers too," fired six bullets in the direction of the fleeing crowd.

Third, defendant argues that the trial court erred in not giving greater weight to the fact that he was provoked into his crimes because he and Kimble had bumped into each other at a

strip club earlier that morning. The jury's verdict of voluntary manslaughter—rather than murder—indicates the jury's finding that *the murder* was provoked, but its attempted murder verdict necessarily indicates the jury's finding that *the attempted murder* was not provoked. The trial court during the resentencing independently found that the attempted murder was not provoked because Banks and the other restaurant patrons on whom defendant opened fire had not attacked or otherwise harassed him. We decline defendant's invitation to conflate the separate facts underlying the death of Rios and the attempted murder of Banks.

Fourth and lastly, defendant argues generally that the court failed to give due weight to the mitigating circumstances of his traumatic childhood, youth, and postconviction rehabilitative efforts. In effect, defendant is asking us to reweigh the mitigating and aggravating circumstances. That is beyond our purview under abuse of discretion review. (*People v. Carmony* (2004) 33 Cal.4th 367, 374 (*Carmony*).)

**B.** ***The trial court complied with the requirements of Assembly Bill No. 124***

Effective January 1, 2022, Assembly Bill No. 124 amended section 1170 to limit a court's discretion to impose a midterm or high-term sentence for a crime with a sentencing triad. As amended, and as pertinent here, section 1170 obligates a trial court to impose the low-term sentence if the defendant has "experienced psychological, physical, or childhood trauma" or was under 26 years old at the time of the crime, if either was "a contributing factor" to the crime, *unless* "the court finds that the aggravating circumstances outweigh the mitigating circumstances [such] that imposition of the low[-end] term would

10

be contrary to the interests of justice." (§ 1170, subd. (b)(6).) Unlike aggravating circumstances necessary to impose the high term, aggravating circumstances considered when evaluating whether or not to impose the low term need not be found by a jury beyond a reasonable doubt or admitted by the defendant. (*People v. Hilburn* (2023) 93 Cal.App.5th 189, 204-205.)

The trial court did not abuse its discretion in concluding that a low-term sentence was not warranted on the attempted murder count. The court found that defendant's childhood trauma and his youth were connected with the attempted murder, but went on to weigh the three mitigating circumstances listed above against the following five aggravating circumstances—namely, that (1) the attempted murder involved great violence, great bodily harm, or threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness; (2) defendant was armed with and used a weapon in the commission of the crime; (3) defendant engaged in violent conduct that indicates a serious danger to society; (4) defendant was on probation when the crime was committed; and (5) defendant's prior performance on probation was unsatisfactory. The court found that the aggravating circumstances outweighed the mitigating circumstances, and thus freed it up to consider a middle- or, if the requirements of Senate Bill No. 567 were also met (as we have concluded they were), a high-term sentence.

Aside from defendant's attacks on the trial court's mention of reracking the gun as well as its finding that the attempted murder was "vicious" and "callous"—which we have already explained lack merit—defendant offers what boils down to three further arguments attacking the court's balancing of aggravating against mitigating circumstances. First, defendant asserts that

11

the trial court did not consider his relative youth.  He is factually wrong, as the court considered his relative youth as a mitigating circumstance.  Second, defendant contends that the trial court was not permitted to consider his prior strike conviction because it was more than five years old, because section 1385, subdivision (c)(2)(H), so prohibits.  This contention is doubly irrelevant:  None of the five aggravating circumstances cited by the trial court dealt with his prior conviction; what is more, section 1385, subdivision (c), deals with whether a trial court should strike *an enhancement* rather than dealing with whether to impose the low term of a triad as the base term for a sentence.  Third and lastly, defendant again effectively argues that the trial got the balancing wrong; as noted above, that is not a cognizable argument under abuse of discretion review.

## II.    Imposition of Consecutive Sentences

Defendant next assails the trial court's decision to run the four-year voluntary manslaughter sentence consecutive to the 18-year attempted murder sentence because the two crimes occurred on the same occasion.  Although this argument is forfeited because it was not raised below (e.g., *People v. Sperling* (2017) 12 Cal.App.5th 1094, 1100), we exercise our discretion to overlook that forfeiture.

The trial court did not err in running the two sentences consecutively.  Although defendant is correct that our Three Strikes law does not *require* a trial court to run sentences consecutively when the underlying crimes were committed on the same occasion or under the same set of operative facts (*People v. Henderson* (2022) 14 Cal.5th 34, 48), a court in that situation still has the *discretion* to do so (*ibid.*; Cal. Rules of Court, rule 4.425;

*People v. Rodriguez* (2005) 130 Cal.App.4th 1257, 1262-1263).[7] What is more, when a defendant engages in separate acts of violence against different victims, that fact alone justifies running sentences consecutively. (*People v. Leon* (2010) 181 Cal.App.4th 452, 468; *People v. Valenzuela* (1995) 40 Cal.App.4th 358, 365.) That is precisely what we have here: Defendant shot Rios in the face, and then opened fire on different victims— namely, Banks, his friends, and the restaurant patrons. Defendant's final complaint that the trial court erred in not articulating its reasons for running the sentences consecutively is without merit because such an articulation is not required, particularly in the absence of a request (indeed, that is why defendant's failure to object constitutes a forfeiture). It is also not required because courts are deemed to be applying the law properly in the absence of a showing otherwise. (*People v. Weaver* (2007) 149 Cal.App.4th 1301, 1313, disapproved on other grounds as stated in *People v. Cook* (2015) 60 Cal.4th 922, 939.)

## III. Failure to Dismiss the Five-Year Prior Serious Felony Enhancement

Effective January 1, 2022, Senate Bill No. 81 (2021-2022 Reg. Sess.) amended section 1385 to guide trial courts in deciding whether and when to dismiss sentencing enhancements. (Stats. 2021, ch. 721, § 1.) As amended, section 1385 grants trial courts "the authority" and a simultaneous duty "to strike or dismiss a[

---

[7] A court may not rely on a fact to impose a consecutive sentence if that fact is also an element of the underlying crime or if the court has elsewhere used that same fact to impose the upper term or otherwise enhance the defendant's sentence. (Cal. Rules of Court, rule 4.425(b).) The trial court's use of the "multiple victims" fact does not transgress this "no dual use" limit.

13

sentencing] enhancement" (or, if they prefer, the "additional punishment for that enhancement") if doing so is "in the furtherance of justice." (§ 1385, subds. (b) & (c)(1).) Although this provision makes clear that whether dismissal of an enhancement is "in the furtherance of justice" is a "discretion[ary]" call for the trial court to make (*id.*, subds. (c)(1), (c)(2) & (c)(3)), the provision also directs that the existence of any of nine enumerated "mitigating circumstances" "weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety." (*Id.*, subd. (c)(2).)

In *Walker*, our Supreme Court rejected the notion that the presence of an enumerated mitigating circumstance erects a rebuttable presumption in favor of dismissing an enhancement that can be rebutted only by a showing that dismissal would endanger public safety. (*Walker*, *supra*, 16 Cal.5th at pp. 1028-1029.) Instead, *Walker* holds that, even when a court determines that dismissing an enhancement will not endanger public safety, the court retains discretion *not* to dismiss or strike that enhancement. In exercising that discretion, the court is to "assign[] significant value" to any mitigating circumstance(s), which "strongly favor[s]" and "will generally result in the dismissal of an enhancement"—except when the "court finds substantial, credible evidence of countervailing factors that 'may nonetheless neutralize even the great weight of the mitigating circumstance, such that dismissal of the enhancement is not in furtherance of justice.'" (*Id.* at pp. 1029, 1036.)

In this case, the trial court declined to strike the five-year enhancement for defendant's prior serious felony even after specifically finding the presence of three mitigating

14

circumstances—namely, that (1) the crimes in this case were connected to defendant's mental illness, (2) they were connected to childhood trauma, and (3) the enhancement was based on a conviction from 1991, which is more than five years old. (§ 1385, subds. (c)(2)(D), (E) [when "[t]he current offense is connected to mental illness" or "prior victimization or childhood trauma"] & (c)(2)(H) [when "[t]he enhancement is based on a prior conviction that is over five years old"].)[8] The trial court also specifically found that dismissing the five-year enhancement would *not* endanger public safety.

Although the trial court's failure to dismiss the five-year prior serious felony enhancement might be proper under *Walker* if the trial "court [had found] substantial, credible evidence of countervailing factors that 'may nonetheless neutralize even the great weight of the mitigating circumstance[s], such that dismissal of the enhancement is not in furtherance of justice,'" this test was not formulated until *Walker* was decided, which was

_____

[8] We reject defendant's arguments that *additional* enumerated mitigating circumstances are at play. Defendant asserts that applying the five-year enhancement "would result in a discriminatory racial impact" under the California Racial Justice Act of 2020 (§ 745) (§ 1385, subd. (c)(2)(A)), but cites only the fact that he is African American and challenged a peremptory strike at trial under the *Batson/Wheeler* doctrine (see *Batson v. Kentucky* (1986) 476 U.S. 79; *People v. Wheeler* (1978) 22 Cal.3d 258). That is insufficient to show that defendant's race played any role in his conviction or sentence. Defendant also asserts that "[t]he application of an enhancement [w]ould result in a sentence of over 20 years" (§ 1385, subd. (c)(2)(C)), but this ignores that his sentence was *already* 22 years before any enhancement was applied. Thus, application of an enhancement would not result in a sentence of over 20 years.

15

years after the resentencing at issue.  We accordingly conditionally affirm the sentence but remand for the trial court to exercise its discretion whether to strike the five-year prior serious felony enhancement under the test clarified in *Walker*.

## IV.    Denial of *Romero* Motion

Defendant argues that the trial court erred in denying as untimely his motion to dismiss his 1991 robbery conviction as a "strike" under the Three Strikes law under *Romero*.  There was no error for two reasons.  First, a defendant has no right to make a *Romero* motion, although he may "invite the court" to exercise its discretion under *Romero*.  (*Carmony*, *supra*, 33 Cal.4th at pp. 375-376.)  Here, the court declined that invitation on the ground that the invitation was made at the eleventh hour—after the petition, after three supplemental briefs, after hours of argument during the resentencing, and just before the sentencing was to conclude.  The court did so—not because it misunderstood its *power* to grant the motion—but because it elected not to do so as a discretionary matter due to the lateness of the request.  This was within the court's discretion.  Second, there is no indication that the court would have granted the motion.  The court clearly understood its discretion to impose a sentence less than the 27-year sentence it was imposing, and elected not to do so; its steadfast refusal to do so in light of what it viewed as a callous crime confirms that the court would have rejected defendant's invitation on the merits. (Accord, *People v. Fuhrman* (1997) 16 Cal.4th 930, 944 [defendant not entitled to a remand if the trial court's comments "indicate that even if it had authority to strike a prior felony conviction allegation, it would decline to do so"].)

16

## V.    Calculation of Custody Credits

Defendant argues for the first time in his reply brief that the trial court erred in failing to exercise its jurisdiction to compute and apply custody credits at resentencing. Defendant has forfeited this contention by failing timely to raise it. (*People v. Taylor* (2004) 119 Cal.App.4th 628, 642-643.) Any error in the prior calculation is of no moment given the need to vacate and remand for a *new* resentencing. At that resentencing, however, the trial court is required to calculate *actual* custody credits up to the date of the resentencing, and local *conduct* credits up to the date of the original sentencing. (*People v. Sek* (2022) 74 Cal.App.5th 657, 673.)

## DISPOSITION

The matter is conditionally affirmed and remanded to the trial court to exercise its discretion under section 1385 to decide whether to strike the five-year prior serious felony enhancement previously imposed pursuant to Penal Code section 667, subdivision (a) under *Walker, supra,* 16 Cal.5th 1024; if it does, defendant is entitled to a complete resentencing. In all other respects, the judgment is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.*

HOFFSTADT

---

*    Justice of the Court of Appeal, Second Appellate District, Division Five, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

17

We concur:

_____, P. J.
LUI


_____, J.
CHAVEZ